RECOMMENDED FOR FULL-TEXT PUBLICATION

Pursuant to Sixth Circuit Rule 206

File Name: 11a0173p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

GERMAINE BOMAR, individually,
                             *Plaintiff-Appellee,*

GERMAINE BOMAR, and as Next Friend to her
minor children, K.M. and K.B.; K.B., a
minor; K.M., a minor,
                                 *Plaintiffs,*

       *v.*

CITY OF PONTIAC; JOHN DOE, 1-2, Pontiac
Police Officers, DAVID WHEATCROFT; BRIAN
WOOD,
                                 *Defendants,*

DANIEL MAIN,
                           *Defendant-Appellant.*

No. 10-2161

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 08-12629—Avern Cohn, District Judge.

Argued: June 2, 2011

Decided and Filed: July 1, 2011

Before: BOGGS and SILER, Circuit Judges; VAN TATENHOVE, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Eric S. Goldstein, JOHNSTON, SZTYKIEL, HUNT, GOLDSTEIN, FITZGIBBONS & CLIFFORD, P.C., Troy, Michigan, for Appellant. Paul M. Hughes, Detroit, Michigan, for Appellees. **ON BRIEF:** Eric S. Goldstein, JOHNSTON, SZTYKIEL, HUNT, GOLDSTEIN, FITZGIBBONS & CLIFFORD, P.C., Troy, Michigan, for Appellant. Paul M. Hughes, Detroit, Michigan, for Appellees.

_____

[*] The Honorable Gregory Van Tatenhove, United States District Judge for the Eastern District of Kentucky, sitting by designation.

———————————

**OPINION**

———————————

BOGGS, Circuit Judge.  In this action brought under 42 U.S.C. § 1983, Plaintiff Germaine Bomar alleges that Officer Daniel Main, the sole remaining defendant, violated her clearly established right not to be subjected to excessive force.  Bomar claims that Main pepper-sprayed her in the eye and punched her in the jaw—both after she had been successfully restrained and handcuffed.  In the proceedings below, Defendants denied that Main took those actions and moved for summary judgment based on qualified immunity.  The district court held that a genuine issue of material fact existed for trial and denied the motion.  Main now appeals that order, and we dismiss his appeal for lack of jurisdiction.

I

On September 11, 2007, police officers conducted an evening drug raid at a house in Pontiac, Michigan.  Officer Main was one of the officers in charge.  During the course of the raid, the officers learned that a vehicle containing drugs and weapons, including AK-47 assault rifles, was scheduled to arrive shortly.  Approximately 15 minutes later, at around 9:20 p.m., a vehicle described as a tan or pewter sedan showed up at the house.  The vehicle reversed and fled at high speed when officers attempted to secure it.  The officers noted that the vehicle was driven by a black male, possibly in his twenties.

The vehicle fled down a street that had only one forward path of egress—Bomar's street.  Officer Main immediately hopped into an unmarked police car with two other officers and entered Bomar's street from the other direction, hoping to intercept the fleeing suspect. When the officers arrived, however, the suspect sedan was nowhere to be found.  Main slowly drove up the street, observing driveways to determine whether the suspect had pulled up to a house to hide.  The officers stopped to observe a vehicle that looked similar to the one they were chasing, and a young black

male—later identified as K.M., Bomar's twelve-year-old son—stood up from behind the car, as though he had been crouching.[1]  The officers jumped out of their unmarked car and, guns drawn, commanded K.M. to stay put.  K.M. did not do so, but rather ran inside the house, with the officers in pursuit on foot.

Officer Main followed K.M. into the house.  Once inside, Main grabbed K.M., who had moments earlier told Bomar that he was being chased.  Chaos ensued.  Not realizing that Main was an officer,[2] Bomar began striking him in an effort to protect her son.  Main quickly handed K.M. off to another officer and physically restrained Bomar.  Both K.M. and Bomar were removed from the house, restrained on the ground in the yard, and handcuffed.  Main testified that he had no difficulty handcuffing Bomar and that, after being cuffed, she was only talking, "probably a little bit" louder than conversational level.  Another officer at the scene testified that Main handcuffed Bomar without any problems, and that she remained only verbally combative after that point.

The parties dispute how Main responded to Bomar's verbal combativeness.  Bomar testified that, after she had been restrained on the ground and handcuffed, Main sprayed her in the eye with pepper spray and punched her in the jaw.  K.M. testified to the same, that after Main handcuffed Bomar, he pepper-sprayed and punched her.[3]  K.B., Bomar's ten-year-old daughter who was watching from the window, similarly testified

---

[1]As it turns out, K.M. was merely taking the family dog out to relieve itself.

[2]Main testified that his clothing was marked "police."  Plaintiff's daughter, K.B., testified that the officers wore white t-shirts and camouflage pants and were not identifiable as police officers.

[3]Main relies on a highly strained reading of K.M.'s deposition transcript to argue that Bomar continued to fight and struggle after being handcuffed and prior to being pepper-sprayed.  K.M. clearly testified that Bomar was sprayed after she was handcuffed.  Main's attorney then asked K.M. about conversation before Bomar was sprayed, and K.M. responded that they were "fighting, and she kept on squirming around, trying to get away."  Main's attorney then asked K.M. to clarify whether Bomar was "squirming around and trying to get away" even after being handcuffed, and K.M. unequivocally responded in the negative, stating that he was referring to the time before she was handcuffed.  Despite this clarification, Main's attorney suggests in his brief that K.M.'s testimony should be read to indicate that Bomar struggled after being handcuffed.  Main's argument is that K.M. said Bomar was fighting before being sprayed, which Main infers must have been after being handcuffed.  But K.M. was initially asked only what Bomar was doing before being sprayed, not what she was doing before being sprayed and after being handcuffed.  K.M. reasonably interpreted the question to refer to what Bomar and Main were doing during their struggle, prior to her being handcuffed.  K.M. made that clear immediately following his initial response.  We note that, to the extent that there is an ambiguity in K.M.'s testimony, it must be resolved in Plaintiff's favor at this stage of the proceeding.  But, in any case, we read the testimony to unambiguously state that Bomar was *not* fighting after being handcuffed.

that her mother was lying on her back on the ground when Main pepper-sprayed her, but her testimony differed as to the timing of the punch—K.B. testified that Main punched Bomar *before* she was handcuffed. Defendants deny that Bomar was punched in the jaw or pepper-sprayed at any time, but for purposes of this appeal only, Main concedes that, after he handcuffed Bomar, he pepper-sprayed her and punched her in the jaw. However, Main argues that Bomar continued to pose a threat, even after being handcuffed.

The officers promptly concluded that twelve-year-old K.M. was not the assault-rifle-toting suspect they had been pursuing and released both him and his mother from handcuffs. Soon after the officers departed, K.M. complained of a headache,[4] and both Bomar and K.M. went to the Pontiac Osteopathic Hospital to have their injuries examined. They arrived at 11:15 p.m., and the hospital observed some apparent swelling on Bomar's jaw and forehead and some tenderness on K.M.'s neck. Months later, Bomar was diagnosed with TMJ syndrome and post-traumatic stress disorder.

Bomar, individually and on behalf of K.M. and K.B., filed a six-count complaint on June 20, 2008, asserting both federal and state-law claims against Main, several other police officers, and the City of Pontiac.[5] On April 13, 2010, the City of Pontiac was, by agreement of both parties, dismissed with prejudice as a defendant. The remaining defendants asserted qualified immunity and moved for summary judgment. On August 17, 2010, the district court granted summary judgment in Defendants' favor on all claims except for two: first, Bomar's excessive-force claim, under 42 U.S.C. § 1983, against Officer Main; and second, Bomar's related state-law battery claim.

Main appeals the district court's denial of qualified immunity and argues that this court has jurisdiction to review the denial under 28 U.S.C. § 1291.

---

[4] K.M. testified that he was struck in the head with a flashlight before he was restrained.

[5] K.B. and K.M. are also named plaintiffs in this action, although their claims have been dismissed with prejudice, a determination that they do not appeal.

II

A

In general, denials of summary judgment are not appealable final orders. However, certain summary judgment orders denying qualified immunity may be appealable pursuant to the collateral order doctrine. *Mitchell v. Forsyth*, 472 U.S. 511, 525–27 (1985); *Gregory v. City of Louisville*, 444 F.3d 725, 742 (6th Cir. 2006).

Significantly, not all summary judgment orders denying qualified immunity are appealable. The Supreme Court has distinguished between denials of qualified immunity at the summary judgment stage that are based on the district court's "determination about pre-existing clearly established law" and, on the other hand, those that are based on the district court's "determination about genuine issues of fact for trial." *Johnson v. Jones*, 515 U.S. 304, 317 (1995) (internal punctuation omitted). In short, the former are appealable final orders; the latter are not. *Id.* at 313.

Pursuant to *Johnson*, this circuit has held that interlocutory jurisdiction is conferred only where the defendant's appeal "involves the abstract or pure legal issue of whether the facts alleged by the plaintiff constitute a violation of clearly established law." *Gregory*, 444 F.3d at 742 (quoting *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998)). Accordingly, if the defendant disputes the plaintiff's version of the facts and wishes to file an interlocutory appeal of the district court's denial of qualified immunity at the summary judgment stage, "the defendant must . . . be willing to concede the most favorable view of the facts to the plaintiff for purposes of the appeal." *Berryman,* 150 F.3d at 563. The underlying principle is that, in the qualified-immunity context, this court may entertain interlocutory appeals of denials of summary judgment in order to resolve legal disputes, not factual ones.[6] *Id.* at 564–65 ("Once a defendant's argument

---

[6]The sole exception to the legal-factual distinction is "where the trial court's determination that a fact is subject to reasonable dispute is blatantly and demonstrably false." *Moldowan v. City of Warren*, 578 F.3d 351, 370–71 (6th Cir. 2009) (quoting *Wysong v. City of Heath*, 260 F. App'x 848, 853 (6th Cir. 2008)); *see Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

drifts from the purely legal into the factual realm and begins contesting what really happened, our jurisdiction ends and the case should proceed to trial.").

B

The district court denied Main's motion for summary judgment because it found "a genuine issue of material fact regarding whether Ms. Bomar was sufficiently restrained, and thus, whether Defendant Main's presumed use of force after Ms. Bomar was handcuffed was excessive and requires that he be denied qualified immunity." The district court specifically pointed to the deposition testimony of Main and other officers at the scene, which suggested that, once Bomar was handcuffed, the situation was under control. On appeal, although Main concedes that he punched and pepper-sprayed Bomar after handcuffing her, he contests the district court's determination that a genuine issue exists as to whether Bomar was under control after being handcuffed and, in doing so, deprives this court of jurisdiction.[7]

Main fights this conclusion with a novel jurisdictional theory. Main latches onto language used in prior decisions of this circuit to argue that this court can review a district court's denial of summary judgment for factual reasons if it considers only the facts alleged by the plaintiffs. Reply Br. at 10–11 (quoting *Shehee v. Luttrell*, 199 F.3d 295, 299 (6th Cir. 1999) ("[I]n order for an interlocutory appeal to be appropriate, a defendant seeking qualified immunity must be willing to concede to the facts as alleged by the plaintiff and discuss only the legal issues raised by the case.")). Significantly, Main interprets "the facts as alleged by the plaintiff[s]" to include plaintiffs' deposition testimonies and nothing else. Here, and although he concedes that the officers' testimony indicates otherwise, Main maintains that we may consider only the depositions of Bomar and her children, which he interprets to reveal that Bomar continued to struggle after being handcuffed.

---

[7]Main makes no argument that this court has jurisdiction to review the district court's denial of summary judgment on the state-law battery claim. Appellant's Br. at 32–33.

However, the language relied upon by Main—"the facts as alleged by the plaintiff"—is not the touchstone of our jurisdictional inquiry, but is rather one application of the underlying principle established by the Supreme Court in *Johnson*: if the defendant disputes the facts in an appeal of a denial of qualified immunity at the summary judgment stage, this court's jurisdiction is at an end. In most cases, a defendant's concession to the facts "as alleged" by the plaintiff will be sufficient to avoid a factual dispute and allow this court to decide pure legal issues. *See Shehee*, 199 F.3d at 299. Here, however, Bomar relies upon the entire record, not only plaintiffs' deposition testimony, in order to create a genuine issue of material fact for trial. In that context, Main's "concession" is nothing more than a dispute over what happened, which is precisely what we are without jurisdiction to entertain at this stage of the proceeding.

Accordingly, Main's interpretation of the phrase "the facts as alleged by the plaintiff" is far too narrow. The facts as alleged by the plaintiff are not simply the facts that can be gleaned from the plaintiff's deposition testimony, but are rather the facts in the entire record, interpreted in the light most favorable to the plaintiff. *Meals v. City of Memphis*, 493 F.3d 720, 726–27 (6th Cir. 2007) ("[A] defendant is required to limit her argument to questions of law premised on facts taken in the light most favorable to the plaintiff."). The scope of the facts that may be considered on appeal is thus consistent with the familiar summary judgment inquiry of viewing all record evidence in the light most favorable to the plaintiff.[8] *See* Fed. R. Civ. P. 56; *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 339 (6th Cir. 2008). That consistency is more than coincidental: where a qualified-immunity defense is raised in a motion for summary judgment, as was the case here, the district court's factual analysis must comply with Rule 56. *See Aldini v. Johnson*, 609 F.3d 858, 863 (6th Cir. 2010) ("[A] defendant enjoys qualified immunity on summary judgment unless the facts alleged and the evidence produced, when viewed in the light most favorable to the plaintiff, would

---

[8]Although the *scope* of the facts that the plaintiff may rely on is consistent with that in an ordinary summary judgment inquiry, in the interlocutory-appeal context, the factual *inquiry* itself is even more friendly to the plaintiff in that we are without power to review—de novo, or under any other standard— the district court's determination that there exist triable issues of fact. *Johnson*, 515 U.S. at 313.

permit a reasonable juror to find that . . . the defendant violated a [clearly established] constitutional right." (internal punctuation and citations omitted)). Main therefore argues for the incredible proposition that this court must review the district court's legal conclusions based on a more circumscribed set of facts than what Rule 56 mandates, in effect changing what is required of the district court to avoid reversal. We do not believe that this court's use of the phrase "the facts as alleged by the plaintiff" was designed to rewrite Rule 56 in qualified-immunity cases.

Main argues that Rule 56 is irrelevant because he is not appealing the summary judgment "portion" of his motion for summary judgment, but rather only the qualified-immunity portion of the motion. But qualified immunity is Main's defense on the merits. That defense, like any other argument on the merits, can be asserted at various procedural stages of the proceeding—from a motion to dismiss to a trial on the merits—and the procedural stage dictates the scope of the factual inquiry. *See Gunasekera v. Irwin*, 551 F.3d 461, 471 (6th Cir. 2009) (reviewing a grant of qualified immunity at the motion-to-dismiss stage). Here, Main asserted his qualified-immunity defense at the summary judgment stage, and he cannot appeal only the merits of his summary judgment motion (somehow divorced from the applicable standards governing a motion for summary judgment) any more than a defendant whose Rule 12(b)(6) motion was denied can appeal only the merits of his motion and rely on favorable evidence outside the pleadings.

We therefore reject Main's proposed jurisdictional analysis, which is inconsistent not only with the underlying legal principle articulated in *Johnson*, but also with Rule 56. And, because Main hangs his hat entirely on his novel jurisdictional theory, we lack jurisdiction to consider his arguments on the merits, all of which are rife with factual disputes and present no question of pure law. *Huckaby v. Priest*, 636 F.3d 211, 216 (6th Cir. 2011) (dismissing appeal of denial of qualified immunity at the summary-judgment stage where defendants "refuse to concede the facts in the light most favorable to [plaintiff], and fail to raise a legal issue on appeal that is separate from their interpretation of the disputed facts in a light most favorable to Defendants").

III

For the foregoing reasons, we DISMISS Officer Main's appeal for lack of jurisdiction.