NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 14a0590n.06

Case No. 13-2127

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

FILED
Aug 04, 2014
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| CHARLES L. WELLS, III, Chapter 7 Trustee, for the Bankruptcy Estate of Mary F. Arnone-Doran, | ) ) ) | |
| | ) | ON APPEAL FROM THE UNITED |
| Plaintiff-Appellee, | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| v. | ) | MICHIGAN |
| | ) | |
| CITY OF GROSSE POINTE FARMS, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| GEORGE LOOSVELT, Sergeant, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: MERRITT, COOK, and DONALD, Circuit Judges.

COOK, Circuit Judge. Grosse Pointe Farms police officer George Loosvelt pulled over Mary Arnone for a routine traffic stop. According to Arnone, Loosvelt sexually harassed her and then falsely reported to her employer, the Henry Ford Health System ("HFHS"), that she threatened him. The officer's report prompted HFHS to fire her. After Arnone filed for bankruptcy protection, Charles L. Wells, III, the trustee of her bankruptcy estate, sued the City and Loosvelt, alleging constitutional violations under 42 U.S.C. § 1983 and state-law claims.

Loosvelt moved for summary judgment, claiming entitlement to qualified and state-law immunity. Citing genuine issues of material fact, the district court denied the motion. We affirm in part, reverse in part, and remand.

I.

For the purposes of this interlocutory appeal of qualified immunity, we "take, as given, the facts that the district court assumed when it denied summary judgment." *Johnson v. Jones,* 515 U.S. 304, 319 (1995). Because the district court declined to specify which facts supported its denial of qualified immunity, we review the record "to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed." *Id.* at 319. We therefore set forth Arnone's account of the events leading to this lawsuit.

On a June morning in 2010, Loosvelt observed Arnone making a left turn on a yellow light on her way to HFHS Cottage Hospital, where she worked as a radiation oncology therapist. Loosvelt pulled her over. During the encounter, Loosvelt allegedly stared at her chest while swaying his hips.[1] When Arnone could not produce proof of insurance, she begged Loosvelt, "[p]lease don't give me a ticket. Just throw me a bone." In response, Loosvelt laughed and said something like "I bet you would like a bone" as he walked to his patrol car, which Arnone interpreted as sexual innuendo.

When Loosvelt returned with a citation for disregarding a yellow light and failure to produce proof of insurance, Arnone lashed out with a stream of invective:

> You are a fucking asshole. And you're also a fucking pervert. And . . . it sickens
> me to think that you can harass women, such as myself, on the public dime and

---

[1] Examination of a video recording (without audio) of the traffic stop reveals that Loosvelt made a body movement that could conceivably be characterized as "swaying his hips." The video does not show, however, whether Loosvelt stared at Arnone's chest or, as Arnone later alleged to HFHS officials, licked his lips.

then go jack off in your car while I have got patients waiting on my table. I hope I never see your dirty fucking face again. And I hope I never see anybody that fucking looks like you.

Loosvelt then asked for her destination, and she responded "I'm just trying to get a few blocks away to [Cottage Hospital]. I hope I never see you there either."[2]

Approximately 15 to 30 minutes later, Loosvelt drove to Cottage Hospital and asked to speak to someone from human resources. Anita Yeager, an HR employee, met with Loosvelt and confirmed that Arnone worked there. Loosvelt reported that, during a traffic stop, Arnone "was irate, swearing[,] and threatened him by saying, 'Ya know what, I better not have you or your family come across my table," in addition to calling him an "asshole." Loosvelt also said that he considered Arnone's tone threatening, and that he felt concerned about the treatment he and his fellow officers would receive at Cottage Hospital.

When Yeager confronted her, Arnone denied threatening Loosvelt, saying she requested only that he "[p]lease don't come to where I work" because "she didn't want to run into him again." (R. 39-6, Yeager Dep. at 150, 154.) Arnone maintained that she would never mistreat a patient. She also told Yeager that Loosvelt looked at her chest while licking his lips.

HFHS terminated Arnone because of her reported behavior during the traffic stop, concluding that she had threatened Loosvelt by saying "Ya know what, I better not have you or your family come across my table," and citing numerous violations of "HFHS Standards of Conduct." HFHS upheld Arnone's termination over her numerous administrative appeals.

---

[2]Not surprisingly, Loosvelt recalls the encounter differently. According to him, Arnone concluded her diatribe by saying "I better not see you come across my table." Arnone denies saying these words. (R. 39-3, Arnone Dep. at 97–98; R. 39-21, Employee Appeals Form at 4; R. 39-23, Nantais Appeal Response at 2.) Loosvelt assessed this alleged statement as a potential threat.

Shortly thereafter, Arnone filed for bankruptcy, listing as an asset a potential civil action against the City and Loosvelt for police misconduct, and Wells sued on behalf of the bankruptcy estate. As to Loosvelt, the complaint alleges violations of the First and Fourteenth Amendments under 42 U.S.C. § 1983; state-law claims of defamation, tortious interference, and gross negligence; and violation of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101, *et seq*.

Loosvelt and the City moved for summary judgment, asserting, *inter alia*, qualified and statutory immunity. At the motion hearing, the district court granted the City summary judgment but denied it with respect to Loosvelt, reasoning that "[t]here's a factual question when you take the pleadings and the exhibits most favorable to the Plaintiff." Loosvelt appeals.

II.

In the qualified immunity context, we exercise interlocutory jurisdiction over the denial of summary judgment only when the defendant's appeal "involves the abstract or pure legal issue of whether the facts alleged by the plaintiff constitute a violation of clearly established law." *Bomar v. City of Pontiac*, 643 F.3d 458, 461 (6th Cir. 2011). This limited jurisdiction reflects the principle that on interlocutory appeal, the appellate court may resolve legal disputes, but not factual disputes. *Id.* Accordingly, "the defendant must . . . be willing to concede the most favorable view of the facts to the plaintiff for purposes of the appeal." *Id.* But "even where the defendant impermissibly relies on disputed facts on appeal[,] this court can ignore the defendant's attempts to dispute the facts and nonetheless resolve the legal issue raised, obviating the need to dismiss the entire appeal for lack of jurisdiction." *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 564–65 (6th Cir. 2013) (internal quotation marks and brackets omitted).

We review de novo the denial of qualified immunity and Michigan statutory immunity. *See Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012). In the qualified immunity context, we adopt the plaintiff's version of the facts unless it "is blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

As a threshold matter, we note that Loosvelt defends by disputing a number of facts rather than conceding Wells's view, as he must for this appeal. First, he argues that we should accept his contention that Arnone said "I better not see you come across my table" because two HFHS employees said Arnone admitted as much to them. Arnone maintains she said only "I hope I never see you [at Cottage Hospital]." Second, Loosvelt insists that the video of the encounter clearly shows that he did not sexually harass Arnone. Yet, the video fails to conclusively repudiate Arnone's contentions. Third, Loosvelt quarrels with whether Wells can establish a genuine dispute concerning Loosvelt's motivation for reporting Arnone to HFHS officials. A reasonable jury, however, could conclude that Loosvelt acted not out of concern for himself, his family, and his colleagues, but in retribution for Arnone's hostility. Accordingly, our analysis assumes the facts as favoring Arnone's account of events.

On appeal, Loosvelt faults the district court's (1) denial of qualified immunity with respect to the § 1983 claims; (2) denial of Michigan statutory immunity with respect to the state-law tort claims; and (3) denial of summary judgment with respect to the ELCRA claim.

*A. Qualified Immunity*

"Through the use of qualified immunity, the law shields 'government officials performing discretionary functions . . . from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 172 (6th Cir. 2004) (quoting *Anderson v.*

*Creighton*, 483 U.S. 635, 638 (1987)).  Whether Loosvelt may enjoy qualified immunity hinges on (1) "whether the facts, viewed in the light most favorable to the plaintiff, could support a finding that the defendant has violated the plaintiff's constitutional rights," and (2) whether "the defendant violated 'clearly established' constitutional rights."  *Williams v. City of Grosse Pointe Park*, 496 F.3d 482, 485 (6th Cir. 2007).  Wells bears the burden of showing that qualified immunity should not shield Loosvelt.  *Rodriguez v. Passinault*, 637 F.3d 675, 689 (6th Cir. 2011).  Loosvelt asserts qualified immunity regarding Wells's (1) First Amendment retaliation claim; (2) Fourteenth Amendment equal protection claim; and (3) Fourteenth Amendment procedural due process claim.

### 1.  First Amendment Retaliation

A prima facie First Amendment retaliation claim requires the trustee here to establish three elements:  "(1) [that Arnone] engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against [her] that would deter a person of ordinary firmness from continuing to engage in that conduct; [and] (3) . . . the adverse action was motivated at least in part by [Arnone's] protected conduct."  *Dixon v. Univ. of Toledo*, 702 F.3d 269, 274 (6th Cir. 2012).  Loosvelt first argues that Arnone's threat, "I better not see you come across my table," is not protected speech.  *See R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 388 (1992) ("[T]hreats of violence are outside the First Amendment.").  Yet, assuming as we must that Arnone said only "I hope I never see you [at Cottage Hospital]," and drawing all inferences in her favor, Arnone did not threaten Loosvelt.  Rather, a factfinder could reasonably construe her statement only as a desire not to encounter Loosvelt ever again.

Loosvelt next contends that an insufficient causal connection links Arnone's termination to his report of the encounter to Yeager.  We look to whether Arnone's termination was a

reasonably foreseeable consequence of Loosvelt's decision to report the alleged threat to an HFHS HR representative. *See Paige v. Coyner*, 614 F.3d 273, 280 (6th Cir. 2010). Loosvelt maintains that he did not "intend, desire, or demand Arnone's termination," and that HFHS officials terminated her only after conducting an independent investigation. But "[e]ven if an intervening third party is the immediate trigger for the plaintiff's injury, the defendant may still be proximately liable, provided that the third party's actions were foreseeable." *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 609 (6th Cir. 2007). A jury could reasonably conclude that Arnone's termination was a foreseeable consequence of Loosvelt's appearing at the hospital in full police uniform and demanding to speak with an HR representative to report a threat by an HFHS employee involving her position at the hospital. Indeed, an HFHS official acknowledged that "Loosvelt's complaint, where he claimed that . . . Arnone had threatened him, ultimately led to her termination." Our procedural requirement to credit Arnone's account of the incident saddles Loosvelt with the violation of her First Amendment right to freedom from state retaliation for protected speech.

Does precedent clearly establish this right? "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

Loosvelt denies a violation of Arnone's clearly established First Amendment right, pressing that "no case . . . stands for the proposition that police officials are barred from interviewing authorized business representatives when investigating employment-related threats of potential physical harm." But this reframing of the issue fails to concede Arnone's version of the facts.

As relevant here, the Supreme Court squarely holds that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston, Tex. v. Hill*, 482 U.S. 451, 461 (1987). "Speech is often provocative and challenging . . . . [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." *Id.* (alteration in original).

Loosvelt attempts to distinguish *Houston* and other cases cited by Wells on factual grounds, but the court "need not find a decision on all fours." *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 684 (6th Cir. 2013). "[E]ven in cases involving less than outrageous conduct, 'officials can still be on notice that their conduct violates established law in novel factual circumstances.'" *Quigley*, 707 F.3d at 684 (quoting *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 377–78 (2009)). Accepting Arnone's account, ample precedent establishes the right to be free from retaliation by a police officer offended by constitutionally-protected insults and criticism. We thus affirm the district court's denial of qualified immunity with respect to the First Amendment retaliation claim.

### 2. Equal Protection

Wells advances both gender-discrimination and "class-of-one" theories of liability under the Fourteenth Amendment's equal protection clause. Wells first alleges that Loosvelt singled out Arnone for disparate treatment—the alleged sexual harassment and the retaliatory report to HFHS—because of her gender. "[T]he Equal Protection Clause . . . protects citizens from police action . . . based on [a protected class]." *Bennett v. City of Eastpointe*, 410 F.3d 810, 818 (6th Cir. 2005). Only Wells's sexual-harassment gender-discrimination theory has merit.

Our case law establishes that "sexual harassment . . . directed solely at the plaintiff because she was a woman violates the equal protection clause." *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988) (citation and internal quotation marks omitted). And Arnone alleges a "classic case of sexual harassment, one in which it [is] obvious that the harassment was directed solely at the plaintiff because she was a woman." *Huebschen v. Dep't of Health & Soc. Servs.*, 716 F.2d 1167, 1172 (7th Cir. 1983) (noting viability of equal protection claim based on sexual harassment of a woman consisting of "embarrassing and belittling remarks . . . [and] sexual advances"); *see also Chaparro v. City of Chicago, Ill.*, No. 11 C 2659, 2012 WL 104629, at *3 (N.D. Ill. Jan. 12, 2012) ("[S]exual harassment . . . is a specialized type of equal protection claim . . . [that] is by its nature usually directed against women.") A reasonable jury could infer that Loosvelt made sexually-suggestive gestures and uttered a sexually-charged comment to Arnone, violating her equal protection right to freedom from gender discrimination.

But Wells fails to demonstrate that Loosvelt's alleged retaliatory report to HFHS amounted to gender discrimination. Nothing ties Loosvelt's decision to report Arnone to Arnone's status as a woman. That is, Wells offers no evidence suggesting that Loosvelt would treat male insulters differently.

Wells also asserts a "class-of-one" equal protection claim as first recognized by the Supreme Court in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (per curiam). "Class-of-one claims are generally viewed skeptically because . . . [i]t is always possible for persons aggrieved by government action to allege, and almost always possible to produce evidence, that they were treated differently from others." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 461–62 (6th Cir. 2012). Wells must overcome a "heavy burden" to prevail under this theory. *Id.* at 462. Specifically, he "must show that [Arnone was] treated differently than those similarly situated in

all material respects" and "that the adverse treatment [she] experienced was so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational." *Id.*

Wells cannot sustain this burden because he offers no evidence that Loosvelt would treat others differently when confronting the same factual scenario. *See Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 574–75 (6th Cir. 2008) (rejecting plaintiffs' class-of-one equal protection claim because they "fail[ed] to allege any specific examples of *similarly situated* individuals, let alone evidence of [such] situations"); *cf. Hanes v. Zurick*, 578 F.3d 491, 492, 496 (7th Cir. 2009) (upholding class-of-one claim against police officers when plaintiff alleged specific examples of similarly situated individuals whom the police failed to arrest despite similar conduct).

### 3. Due Process

Wells asserts that Loosvelt violated Arnone's Fourteenth Amendment procedural due process right by maliciously and deliberately depriving her of her protected property interest in her employment at HFHS and her reputational liberty interest. To establish a procedural due process claim, Wells must show that Arnone had a constitutionally-protected property or liberty interest. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). As Loosvelt correctly points out, she had neither.

First, Arnone had no protected property interest in her at-will employment at HFHS. Under Michigan law, "at-will employees . . . have no property interest in their continued employment." *Pucci v. Nineteenth Dist. Court*, 628 F.3d 752, 766 (6th Cir. 2010) (citing *Lytle v. Malady*, 579 N.W.2d 906, 910–11 (Mich. 1998)). Moreover, Michigan law espouses a "strong presumption of employment at will." *Lytle*, 579 N.W.2d at 911. An employee may rebut this presumption in three ways:

> (1) [P]roof of a contractual provision for a definite term of employment or a provision forbidding discharge absent just cause; (2) an express agreement, either written or oral, regarding job security that is clear and unequivocal; or (3) a contractual provision, implied at law, where an employer's policies and procedures instill a legitimate expectation of job security in the employee.

*Id.* (internal quotation marks and footnotes omitted).

Wells attempts to satisfy the third of these means, arguing that HFHS's "formal multi-step appeal process and . . . progressive discipline corrective action program" instilled a legitimate expectation of job security in Arnone. Yet, HFHS's corrective action policy expressly provides that "this policy and its contents should not be construed to negate or in any way alter the at-will employment relationship." This disclaimer negates any contention that HFHS's corrective-action policy created a legitimate expectation of just-cause employment. *See Lytle*, 579 N.W.2d at 911–12 (holding that employee handbook's disclaimer that it did not alter at-will nature of employee-employer relationship defeated plaintiff's due process claim).

Second, though the complaint asserts an injury to Arnone's liberty interest in her reputation, Wells offers no appellate argument to support this theory. Wells's brief also fails to support her allegation that Loosvelt violated Arnone's substantive due process rights. We therefore deem these arguments forfeited. *See United States v. Layne*, 192 F.3d 556, 566–67 (6th Cir. 1999).

### B. Michigan Statutory Immunity

Loosvelt also appeals the district court's denial of statutory immunity with respect to Wells's state-law claims for gross negligence, defamation, and tortious interference. We exercise jurisdiction over Loosvelt's interlocutory appeal of the denial of statutory immunity under Mich. Ct. R. 7.202(6)(a)(v). *See Bennett v. Krakowski*, 671 F.3d 553, 560 (6th Cir. 2011).

Genuine issues of material fact preclude Loosvelt's claim to statutory immunity for each state-law claim.

### 1. Gross Negligence

Michigan law defines gross negligence as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." Mich. Comp. Laws § 691.1407(8)(a). Should a reasonable jury credit Arnone's account, it could find Loosvelt grossly negligent insofar as he made false and defamatory statements about Arnone to her employer in retribution for her constitutionally-protected insults and criticism, as such actions could demonstrate a substantial lack of concern for whether Arnone would lose her job.

Loosvelt insists that even if his conduct fit the gross-negligence standard, Wells cannot establish that his acts proximately caused Arnone's termination. For the purposes of statutory immunity, Michigan law defines the proximate cause as "the one most immediate, efficient, and direct cause preceding an injury." *Robinson v. City of Detroit*, 613 N.W.2d 307, 311 (Mich. 2000). Viewing the evidence in the light most favorable to Arnone, a reasonable factfinder could find that HFHS terminated Arnone as a direct result of Loosvelt's making a false report about Arnone to HFHS. Yeager attributed Arnone's termination to Loosvelt's report. And HFHS Vice President Thomas Nantais said that "the reason she was being terminated was that, *based on the complaint made by the officer*, it is not acceptable that any employee use her employment within HFHS in a threatening manner." (emphasis added).

### 2. Intentional Torts

Loosvelt also claims statutory immunity from Wells's intentional-tort claims for defamation and tortious interference with an advantageous business relationship. To establish immunity from liability for the reporting to Arnone's employer, Loosvelt must show that "he

was acting in 'good faith,'" meaning that he did not act "*maliciously* or with a *wanton or reckless disregard of the rights of another*." *Odom v. Wayne Cnty.*, 760 N.W.2d 217, 225 (Mich. 2008). Again, a reasonable jury could find that Loosvelt acted "maliciously, or for an improper purpose." *Id.* at 224 (internal quotation marks omitted).

### C. Michigan ELCRA

Last, Loosvelt argues that Wells's ELCRA claim must fail because it is predicated on federal constitutional challenges, and Michigan law dictates that § 1983 provides the exclusive remedy for such actions. But Wells correctly points out that we lack interlocutory jurisdiction to consider this argument because Michigan governmental immunity applies only to tort claims, *see* Mich. Comp. Laws § 691.1407, and so Mich. Ct. R. 7.202 provides no jurisdictional basis.

Loosvelt responds that the ELCRA claim is "inextricably intertwined" with Wells's § 1983 claims, and thus the court may exercise pendent jurisdiction. "[S]uch jurisdiction only may be exercised when the appealable issue at hand cannot be resolved without addressing the nonappealable collateral issue." *Chambers v. Ohio Dep't of Human Servs.*, 145 F.3d 793, 797 (6th Cir. 1998). Here, Wells's ELCRA allegations stand separate from his federal constitutional allegations (*compare* R. 24, Am. Compl. ¶¶ 70–83 *with id.* ¶¶ 19–42); Loosvelt's contrary characterization of Wells's claims finds no support in the record. And none of the cases cited by Loosvelt stands for the proposition that § 1983 necessarily supplants ELCRA claims. Indeed, none even mentions the ELCRA. *See Khan v. City of Flint*, 800 N.W.2d 600, 600 (Mich. 2011) (holding that § 1983 "is the exclusive remedy for alleged federal constitutional violations"); *Jones v. Powell*, 612 N.W.2d 423, 427 (Mich. 2000) (per curiam) (no inferred damages remedy for violations of Michigan Constitution against municipalities or government employees sued in

individual capacities); *Patton v. Vill. Of Cassopolis*, No. 301754, 2012 WL 205832, at *4 (Mich. Ct. App. 2012) (per curiam) (same).

III.

For these reasons, we AFFIRM in part and REVERSE in part. We REVERSE and REMAND for the entry of summary judgment in favor of Loosvelt on all of Wells's claims with the exception of the First Amendment retaliation claim, the sexual-harassment equal protection claim, and the state-law claims. With regard to those claims, we AFFIRM the denial of summary judgment and REMAND for proceedings consistent with this opinion.

**MERRITT, Circuit Judge, dissenting.** It seems to me in this case that the police officer-appellant has just as much a First Amendment right to describe the plaintiff's statements and conduct when he stopped her as the plaintiff has to become angry and call him names. This is just a case of two people becoming angry and letting words fly. The officer's description of the plaintiff's angry words does not rise to the level of a First Amendment violation, and this case should be stopped in its tracks now. It should not go on to a jury trial.