NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0508n.06

No. 24-3330

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>

ADAM FRIED, Administrator of the Estate of Desmond Franklin,

  Plaintiff-Appellee,

v.

JOSE GARCIA,

  Defendant-Appellant.

</td><td>

)
)
)
)
)
)
)
)
)
)
)

</td><td>

FILED
Dec 09, 2024
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

OPINION

</td></tr>
</table>

Before: KETHLEDGE, THAPAR, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. Desmond Franklin was shot and killed by off-duty officer Jose Garcia while both were driving. Garcia moved for summary judgment on the ground of qualified immunity. The district court denied the motion, finding that genuine disputes of material fact remained regarding whether Franklin had threatened Garcia with a gun. Because we lack jurisdiction to resolve factual disputes in this interlocutory posture, we DISMISS the appeal.

I.

This is an appeal from the denial of summary judgment, so we make all reasonable inferences in favor of the non-moving party. We describe the facts accordingly, noting where the parties' versions of the facts diverge. *See Chappell v. City of Cleveland*, 585 F.3d 901, 909 (6th Cir. 2009).

In April 2020, Jose Garcia, an off-duty police officer, was driving to work in his Silver Honda.[1] While stopped at a stop sign, he observed Devin Badley exit the passenger side of a maroon Ford Taurus and steal some boxes from the back of an unattended truck. *Fried v. Garcia*, 2024 WL 1443398, at *1 (N.D. Ohio Apr. 3, 2024). Desmond Franklin was in the driver's seat of the Ford. Garcia lowered his window and had words with Franklin. On Garcia's telling, he admonished Franklin "that's not nice, put it back," to which Franklin responded "shut the f*ck up, you want your shit shot up?" R. 44-4, PageID 442. By contrast, Badley claims that Garcia called Franklin a "pussy," to which Franklin responded, "you a bitch." *Fried*, 2024 WL 1443398, at *1.

After this interaction, Garcia turned right at the stop sign, heading to work. Franklin's car immediately cut through a Wendy's parking lot where he told Badley to "hand me the stick."[2] Badley testified that the "stick" referred to a gun stashed under the carpet in the front passenger footwell. R. 44-6, PageID 688–91. Badley handed the gun to Franklin, who hid it under his right leg. Franklin then turned onto the same road as Garcia and sped up, in an apparent effort to catch up to Garcia.

At this point, Garcia was in the right-most lane of the road, stopped at a red light, with a car behind him. Franklin, one lane to the left of Garcia, accelerated rapidly and caught up to Garcia just as Garcia was driving through the intersection, on the now-green light. Garcia could see all of this through his side mirror. The driver of the car behind Garcia testified that he saw Franklin's

---

[1] Both parties take the position that Garcia was acting under color of state law at the time of the shooting. *See* R. 53, PageID 1252; Appellant Br. at 14. We proceed on that assumption.

[2] The district court opinion says that Franklin "then drove to a Wendy's drive-through" and that "[a]fter leaving Wendy's, Franklin returned to the road and pulled up next to Garcia." R. 53, PageID 1249. To the extent one could misunderstand this sentence as suggesting that Franklin bought food before returning to the road, video evidence shows that's not what happened. Franklin cut through the Wendy's parking lot in a few seconds before turning on to the street to follow Garcia.

Ford "[c]ome flying by to try to catch up with [Garcia's] silver Honda" and that it "was like his car came out of nowhere. It appeared to me that [Franklin] was aggressively trying to catch [Garcia]. It looked to me like he wanted to have a confrontation with [Garcia]." R. 44-8, PageID 756.

Badley, for his part, testified that Franklin cut through the Wendy's parking lot and turned right, proceeding until they reached the light. But he claimed that he didn't know Garcia was on that street. Badley says he "wasn't even paying attention to my surroundings. I was just looking straight." R. 44-6, PageID 701–02.

As Franklin caught up to Garcia, the video shows him slowing down to get parallel with Garcia's car.[3] The driver of the car behind Garcia testified that, at this point, Franklin "made an aggressive move slightly into the lane of the silver car as though it was trying to make him stop. The maroon car in the other lane was very close to the silver car ahead of me at that point. It immediately made me uncomfortable. I slowed down because I thought there might be trouble." R. 44-8, PageID 756.

Although video evidence from neighborhood security cameras shows the movement of the cars from a distance, no video recording captures what happened inside the vehicles leading up to or at the moment of the shooting. For that, we must rely on the testimony of the two surviving witnesses, Badley and Garcia. Garcia says that, when the cars were parallel, he looked to the left and saw Franklin pointing a gun at him. Since the barrel of the gun drew Garcia's attention, he

---

[3] The district court mistakenly claimed that Garcia said Franklin pulled up next to him while he was stopped at the light. Garcia's testimony was that Franklin caught up to him while he was going through the light (not stopped), and the video evidence clearly contradicts any finding that Franklin pulled up next to Garcia while stopped at the light. *See Bell v. City of Southfield*, 37 F.4th 362, 364 (6th Cir. 2022) ("we can only rely on the videos over the [plaintiff's allegations] to the degree the videos are clear and 'blatantly contradict[]' or 'utterly discredit[]' the plaintiff's version of events" (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

did not know which of Franklin's hands held the gun or how close the gun was to Franklin's chest. Upon seeing the gun, Garcia drew his weapon, pointed it at Franklin's car, and fired several times. One round hit Franklin in the temple; Franklin's foot pressed down on the gas, propelling the car forward until it crashed into a cemetery fence. Franklin did not survive.

Badley tells a different story. According to Badley, Franklin pulled alongside Garcia's car and "we was just sitting there," not moving at "a red light. We was sitting at a red light. Then the shots rung out." R. 44-6, PageID 702. This testimony is directly contradicted by the video evidence, however. The video clearly shows that the light was green when Franklin reached the intersection; that Garcia had made it through the intersection by the time Franklin pulled parallel; and that, while the cars were parallel, both cars were moving. *See Scott*, 550 U.S. at 380.

Regardless of whether Garcia fired when they were stopped at the light or driving, Badley, who was seated in the passenger seat of Franklin's car, maintains that he never saw Franklin retrieve the gun from under his leg or point it at Garcia. And, although he testified that he was looking straight out the windshield when the shooting occurred, he also testified that he "would know if a gun was being pointed. I could see that, but I never seen it." R. 44-6, PageID 722, 719–20.

Once shots rang out, Badley "ducked [his] head to the left" for "ten, 15 seconds" until the car crashed and he felt Franklin's blood on him. R. 44-6, PageID 699. At that point, Badley looked up and saw Franklin's head and both his hands on the steering wheel.

After the car crashed into the cemetery fence, Badley exited the vehicle, sought help, and then returned to the car and tried to assist Franklin. Garcia called 911 immediately after he fired his gun, reporting that he had seen a gun and believed he had been shot at. When another officer arrived at the scene, Garcia exited his vehicle and informed her that there was a gun in the Ford

and that "I was involved." R. 44-4, PageID 536–38. Both officers then approached the Ford, and Garcia yelled at Badley, "where's the gun?" Badley responded by pointing at the driver's side floorboard. R. 44-4, PageID 540; R. 44-6, PageID 713. The gun was on top of Franklin's feet, covered in blood; pulverized glass was stuck to the barrel. Garcia's expert opined that the glass could have come only from the passenger window.

Adam Fried, the administrator of Franklin's estate, sued Garcia under 42 U.S.C. § 1983, arguing that he used excessive force in violation of the Fourth Amendment. *Fried*, 2024 WL 1443398, at *3–5. Fried also brought state law claims for wrongful death, survivorship, and punitive damages. *Id.* at *6–7. The district court determined that Garcia's immunity as to all claims depended on whether Franklin had threatened Garcia by displaying or pointing his weapon at Garcia. Because the two surviving witnesses, Garcia and Badley, offered different accounts on this central issue, the district court found that genuine disputes of material fact remained and denied summary judgment. *Id.* at *4–5. Garcia now appeals.

## II.

An officer is entitled to qualified immunity unless every "reasonably competent" officer in his position would have known that his actions were unlawful. *Chappell*, 585 F.3d at 907. When an officer raises a qualified immunity defense, we ask "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Butler v. City of Detroit*, 936 F.3d 410, 417 (6th Cir. 2019) (citation omitted). The plaintiff carries the burden to show that the answer to both questions is "yes." *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002).

When a district court denies summary judgment on qualified immunity grounds, our review is de novo. *Bey v. Falk*, 946 F.3d 304, 311 (6th Cir. 2019). But, in this posture, we generally lack

"jurisdiction to entertain interlocutory challenges to a district court's factual findings and may only address 'neat abstract issues of law.'" *Id.* at 312. "[U]nreviewable determinations" include whether "an issue of fact is 'genuine.'" *Roberson v. Torres*, 770 F.3d 398, 402 (6th Cir. 2014) (quoting *Johnson v. Jones*, 515 U.S. 304, 319 (1995)). But we can disturb a district court's denial of summary judgment based on factual disputes when the parties "tell two different stories, one of which is blatantly contradicted by the record." *Scott*, 550 U.S. at 380.

### III.

Garcia argues that he is entitled to qualified immunity because he saw Franklin aim a gun at him, which justified Garcia's use of deadly force. *See, e.g.*, *Naji v. City of Dearborn*, 120 F.4th 520, 524 (6th Cir. 2024). The district court agreed with the legal premise that, under the Fourth Amendment, Franklin's aiming or threatening display of a firearm would have justified Garcia's use of force. *Fried*, 2024 WL 1443398, at *4. The district court denied summary judgment, however, because the conflicting accounts given by Garcia and Badley created a genuine factual dispute. *Id.* Garcia, whose car was positioned to the right of Franklin's, testified that Franklin pointed a gun at him from the driver's seat; Badley, who was sitting in the passenger seat next to Franklin, says he did not.

In an interlocutory appeal, we generally lack jurisdiction to second-guess a district court's determination that a dispute of fact is genuine. *Roberson*, 770 F.3d at 402 (quoting *Johnson*, 515 U.S. at 319). Our jurisdiction is limited to legal questions, such as whether, under the plaintiff's version of the facts, an officer's actions violated clearly established law. *Bomar v. City of Pontiac*, 643 F.3d 458, 461 (6th Cir. 2011). But Garcia does not argue that his use of force was justified even if Badley's story is true. Nor does he meaningfully argue that, on the plaintiff's version of events, no clearly established law marked the outer boundaries of his conduct.

Garcia's opening brief contains a lone sentence, in the summary of the argument section, claiming "there is no clearly established law that Garcia violated Franklin's constitutional rights when he used deadly force where, after a profanity-laden exchange, Franklin chased Garcia down the street and produced a gun from his vehicle." Appellant Br. at 6. But Garcia never again mentions this argument, so it is forfeited. *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997). And, even if it were preserved, Garcia's claim that "Franklin . . . produced a gun from his vehicle" fails to concede the plaintiff's version of the facts, which says that Franklin did not "reach for," "pick . . . up," or "point the gun at Garcia." R. 44-6, PageID 719–20. When, as here, a defendant insists on his own factual account, we lack jurisdiction to decide an interlocutory appeal. *McDonald v. Flake*, 814 F.3d 804, 812–14 (6th Cir. 2016).[4]

Garcia disagrees. Relying primarily on our decision in *Chappell*, 585 F.3d at 901, Garcia invokes an exception to the rule barring fact-based interlocutory appeals. He says that we may reject the district court's conclusion that a genuine factual dispute remains because the district court gave the "plaintiff the benefit of inferences and suppositions that are not only not supported by the record facts, but are directly contradicted" by them. *Id.* at 911. Garcia highlights Badley's testimony that he last saw the gun in the Wendy's parking lot before the shooting, that he was not paying attention to his surroundings, and that he "was looking straight ahead and did not see Franklin move the gun out from under his thigh or point it in Garcia's direction." Appellee Br. at 21–22. Garcia argues that this testimony shows that Badley "lacked personal

---

[4] Garcia's argument that the district court misapplied our segmented approach to excessive force cases fails for the same reason. He argues that there is no record evidence contradicting Garcia's testimony that "Franklin had a gun in his hand during the immediate seconds after Franklin's car caught up to Garcia's vehicle, [and] that Garcia perceived Franklin's gun when the vehicles were side by side." Appellant Br. at 29. This argument adopts Garcia's version of the facts, which again, we cannot do. Garcia's segmented approach argument thus fails because it is merely an attempt to litigate on his own version of the facts. *McDonald*, 814 F.3d at 812–14.

knowledge . . . whether Franklin pointed his gun at Garcia." Reply Br. at 9. And without any record "evidence refuting [Garcia's] account of the circumstances [he] confronted" at the time of the shooting, Garcia says that no "*genuine* issue of material fact" exists. *Chappell*, 585 F.3d at 912–13.

We see things differently. Making all reasonable inferences in Fried's favor (as we must), Badley's testimony conflicts with Garcia's. Badley says he never saw Franklin retrieve his gun from under his leg or point it in Garcia's direction. As the district court noted, these two were in a small car, and Garcia admitted in his deposition testimony that, for Garcia to have seen the gun, Franklin's arm must have been extended toward the passenger side of the vehicle. It is reasonable to infer that Badley, seated in the front passenger seat, would have noticed when the gun approached or crossed his chest, even if he was looking straight ahead. And Badley testified accordingly: "I was looking straight, but I – I can see – I can see if a gun . . . I would know if a gun was being pointed. I could see that, but I never seen it." R. 44-6, PageID 722. The district court's conclusions were based on record evidence, not, as Garcia claims, on "mere allegations or speculation." Appellant Br. at 17. And conflicting witness testimony over a material fact—especially here where there is little other evidence—is sufficient to create a genuine issue for trial. *See Couch v. Brooks*, 2022 WL 2963208, at *4 (6th Cir. July 26, 2022); *see also Gambrel v. Knox County*, 25 F.4th 391, 405 (6th Cir. 2022) ("The Officers identify no case that has allowed courts to reject one person's sworn testimony as 'incredible' simply because other witnesses had a different recollection." (citation omitted)).

To be clear, we in no way mean to suggest that Fried's evidence will be sufficient at trial. The district court expressed "serious concerns" regarding Badley's veracity. *Fried*, 2024 WL 1443398, at *4. And we don't doubt that Garcia "will have plenty of evidence with which to

impeach" Badley. *Gambrel*, 25 F.4th at 404. In addition to the issues the district court identified, Badley's testimony regarding the timing of the shooting conflicts with the video evidence. His deposition testimony conflicts with previous statements he gave to the police regarding whether he could hear the argument between Franklin and Garcia, the placement of Franklin's hands after the crash, and when he first saw a gun in the car. And he changed his story multiple times during his deposition. But any doubts we might have about Badley's testimony do not permit us to assume the jury's place. *Gambrel*, 25 F.4th at 404. Everything here turns on credibility. And credibility disputes are for the jury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").

In sum, Garcia's interlocutory appeal seeks merely to contest whether there is a genuine factual dispute regarding whether Franklin threatened Garcia with a gun. We thus lack jurisdiction to decide whether Garcia enjoys qualified immunity from suit under § 1983. *Johnson*, 515 U.S. at 319–20. And we similarly lack pendent jurisdiction to decide his state law claims. *See McKenna v. City of Royal Oak*, 469 F.3d 559, 562 (6th Cir. 2006).

We DISMISS the appeal.