RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0070p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

CHRISTOPHER JOHN SAVOIE,
                                 *Plaintiff-Appellant,*

v.

No. 10-6529

Judge JAMES G. MARTIN, III, individually,
and in his official capacity as judge and in his
official capacity as Tennessee Supreme Court
Rule 31 Neutral and as a party to a Rule 31
mediation contract; STITES & HARBISON,
PLLC, in their capacity as employer of
Mediator James G. Martin, III,
                                 *Defendants-Appellees.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 10-00327—Aleta Arthur Trauger, District Judge.

Decided and Filed: March 6, 2012

Before: MARTIN and McKEAGUE, Circuit Judges; CALDWELL, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** Connie Reguli, LAWCARE FAMILY LAW CENTER, Brentwood,
Tennessee, for Appellant. Martha A. Campbell, Mary M. Bers, OFFICE OF THE
TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, Garry K. Grooms,
STITES & HARBISON PLLC, Nashville, Tennessee, for Appellees.

_____

[*] The Honorable Karen K. Caldwell, United States District Judge for the Eastern District of
Kentucky, sitting by designation.

1

———————————

**OPINION**

———————————

BOYCE F. MARTIN, JR., Circuit Judge.   This case arises out of a custody dispute.  Christopher John Savoie, M.D., brought this suit on behalf of himself and his minor children against James G. Martin, III, in his individual and official capacity as both a mediator and a judge for the Twenty-First Judicial District in Tennessee; and Stites & Harbison, PLLC, the law firm that employed Martin when he worked as a court-appointed mediator in Savoie's divorce proceedings with his now-ex-wife.  Savoie also sued a court-ordered parental coordinator.  The district court dismissed each of Savoie's claims. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

I.

The facts of this case are summarized only for the purpose of background.  The tragedy of this dispute is not before us but remains in the Tennessee state court system. In 2008, Savoie filed for divorce in the Chancery Court of Williamson County, Tennessee.  Tennessee law mandates mediation in certain contested divorce proceedings. The now-Judge Martin was appointed to mediate Savoie's divorce from his ex-wife. Martin performed the mediation as part of his private legal practice for the Nashville office of Stites & Harbison.  Effective January 1, 2009, after he concluded his role as mediator, Martin became a judge in the Twenty-First Judicial District of Tennessee.

In January 2009, after multiple mediation sessions, Judge Timothy L. Easter granted Savoie and his ex-wife an absolute divorce.  The terms of the divorce settlement allowed Savoie's ex-wife to take the children to Japan during summer vacations but required her to maintain Tennessee residency and live within 100 miles of Savoie.

After the divorce had been entered, Savoie became concerned that his ex-wife planned to abduct the children to her native Japan.  In light of comments made by Savoie's ex-wife, Savoie filed a petition on March 16, 2009, to modify the court-approved parenting plan that had been negotiated with the divorce.  Savoie also sought

a restraining order that would bar his ex-wife from traveling to Japan with the children. On March 19, Judge Jeffrey Bivens entered a temporary restraining order and scheduled a hearing for March 30 on the permanency of the restraining order.

The March 30 hearing, though initially assigned to Judge Easter, was later re-assigned to Judge Martin. The parties, including Savoie's counsel, agreed on the record to have Judge Martin hear the motion. In fact, it was Judge Martin who expressly raised the issue of his prior involvement as mediator and indicated his willingness to address the temporary restraining order unless either party had objection. Counsel for both parties indicated they had no objection. Moreover, counsel for Savoie's ex-wife, speaking for both counsel, affirmatively stated: "[We] both agree that it would be in the clients' best interests, actually, if you would continue to be involved in this case, and we were pleased for you to be the judge on this case."

After hearing testimony, Martin lifted the temporary restraining order prohibiting Savoie's ex-wife from traveling with the children to Japan and authorized the court to release the children's passport numbers to the ex-wife for the purpose of making travel arrangements. Subsequently, on May 27, as a result of further mediation proceedings (in which Martin was not involved) addressing Savoie's petition for modification of the parenting plan, Savoie and his ex-wife reached an agreement that was memorialized in an agreed order modifying the parenting plan. On August 12, Savoie's ex-wife left the United States with no apparent intent to return. At the time of the filing of the Second Amended Complaint in September 2010, Savoie's ex-wife and children had not returned to the United States; Savoie had been awarded full custody of the children; and his ex-wife had been charged with felony custodial interference.

Savoie filed suit against Martin in his individual and official capacities as both judge and mediator; Stites & Harbison in its capacity as Martin's employer during the time he acted as the mediator; and a court-ordered parental coordinator. Savoie alleged claims under 42 U.S.C. § 1983 and state law negligence claims against all of the defendants. Savoie also alleged contract claims against Stites & Harbison. Savoie sought money damages, and declaratory and injunctive relief. Savoie amended his

complaint twice.  After Savoie filed his Second Amended Complaint, the defendants filed renewed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court granted defendants' motions, finding that Martin was entitled to judicial immunity for statements he made while he was presiding as a judge and to quasi-judicial immunity for any statements he made as a mediator.  The district court determined that Savoie had not stated a valid section 1983 claim against Stites & Harbison and declined to exercise jurisdiction over the state law claims.  The district court also dismissed Savoie's claims for injunctive and declaratory relief, and determined that the court-ordered parental coordinator was immune from suit.  Savoie appeals the dismissal of all claims except those against the court-ordered parental coordinator.

Savoie claims that the district court erred in dismissing his claims.  He argues that the district court erred by determining that (1) Martin was entitled to judicial immunity for claims arising from the March 30 hearing, including those claims based on statements he allegedly made in his role as a judge and a mediator, and those claims based on state law; (2) Stites & Harbison was not liable for acts taken by Martin; and (3) the claims for declaratory and injunctive relief should be dismissed.  We agree with the district court's finding that Savoie has failed to state a claim for which relief can be granted and we affirm the district court's judgment.

II.

We review de novo grants of Rule 12(b)(6) motions.  *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009).  "To survive a motion to dismiss, [a plaintiff] must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  All well-pled facts in the complaint must be accepted as true.  *Courie*, 577 F.3d at 629 (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).

1.      Judicial Immunity

Savoie first argues that the district court erred in finding that Judge Martin was entitled to judicial immunity for his actions taken during the March 30 hearing.  A plaintiff can overcome judicial immunity in only two circumstances: "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.  Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991) (citation omitted).

As a Tennessee circuit court judge, Martin had general jurisdiction pursuant to Article VI of the Tennessee Constitution and Tennessee Code section 16-10-101.  At the time that Martin served as a mediator and judge in Savoie's case, Tennessee Supreme Court Rule 31 stated that "[a] person serving as a Rule 31 dispute resolution neutral in an alternative dispute resolution proceeding shall not participate as attorney, advisor, judge, guardian ad litem, master, or in any other judicial, or quasi-judicial capacity in the matter in which the dispute resolution was conducted."  Savoie argues that Rule 31 prohibited Martin from serving as a judge in Savoie's case after acting as a mediator, and that this violation removed Martin's jurisdiction to serve as a judge for a case in which he had previously served as the mediator.  Savoie does not cite—and this Court has not identified—any support for the proposition that a violation of Tennessee Supreme Court Rules results in a loss of jurisdiction.  The Supreme Court has stated that "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) (internal quotation marks omitted).  "[I]f a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action." *Id.* at 357 n.7.  Given that Martin was a lawfully appointed judge with jurisdiction under the Tennessee Constitution and statutes, and that the substance of the March 30 hearing—whether to make permanent a temporary restraining order—was well

within his jurisdiction as a state circuit court judge, we conclude that Martin was acting within his jurisdiction when he presided over the March 30 hearing. In retrospect, Judge Martin probably should have recused himself because of his prior involvement in this clearly contested custody dispute. This alone, however, does not nullify his judicial immunity in the present proceedings.

Savoie also challenges the district court's finding that Judge Martin was performing a "judicial function" when he presided over the March 30 hearing. In *Mireles*, the Supreme Court rejected a plaintiff's argument that a judge's direction to police officers to carry out a judicial order with excessive force was a "nonjudicial act." 502 U.S. at 12. The Court concluded that "if judicial immunity means anything, it means that a judge will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority." *Id.* at 12-13 (internal quotation marks omitted). Savoie argues that Martin's reliance on confidential information he learned during the mediation turned Martin's participation during the hearing into that of a witness rather than a judge. A review of the record makes clear that Martin's remarks as he presided over the hearing served only to clarify his understanding of the matter before him and explain his perspective to the parties, and that Martin did not act as a witness or in any other non-judicial capacity. Though we may question Judge Martin's decision, as we stated earlier, to preside over a case in which he had already acted as a neutral mediator, we cannot conclude that he was not performing a "judicial function" during the hearing.

Savoie argues separately that the district court erred in finding that Martin was immune from claims based on statements he made at the hearing that violated his obligation as a mediator. In finding that Martin was immune from claims against him as a mediator, the district court found that Martin "went directly from the protected [alternative dispute resolution] area to the judicial arena" and "never entered an environment without immunity protection." Savoie alleges that, during the March 30 hearing, Martin disclosed confidential information that he had learned during the course of the mediation and that Martin is liable for this disclosure as a mediator. Savoie argues that Martin, while acting as a judge and not a mediator, was not entitled to protections

due to him as a mediator.  We have already stated that Judge Martin has judicial immunity for actions taken during the March 30 hearing.  Indeed, even if Judge Martin's actions had been malicious or in clear excess of his authority, he would be entitled to immunity. *See Stump*, 435 U.S. at 355-56.  The facts alleged by Savoie show that Judge Martin acted within his jurisdiction and capacity.

Savoie also challenges the district court's dismissal of the pendent state law claims made against Martin in his individual capacity.  Savoie offers no reason why his state law claims against Martin should be treated differently from his federal claims and instead simply states that he "continues to make the same argument against Defendant Martin as Mediator on the state claims."  As we have explained above, we conclude that Judge Martin is entitled to judicial immunity for the actions alleged in the complaint, and we conclude that the district court correctly dismissed the pendent state law claims against him.

2.        Stites & Harbison's Liability for Martin's Actions

Savoie argues that the district court erred in dismissing his section 1983 claim against Stites & Harbison.  "A section 1983 claimant must show 1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." *Street v. Corrections Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996) (internal quotation marks omitted).  In the Second Amended Complaint, Savoie acknowledges that there is no federal law supporting liability in this situation.  Nonetheless, Savoie argues that Stites & Harbison, as the private employer of an employee providing court-mandated mediation, is analogous to a private prison—which this Circuit treats as a state actor—and can therefore be held liable for the acts of its agents as a state actor.  Stites & Harbison points out that Savoie has failed to advance any support for the argument that Stites & Harbison should be considered a "state actor."

Moreover, a defendant such as Stites & Harbison cannot be held liable under section 1983 on a respondeat superior or vicarious liability basis. *See Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005); *Street*, 102 F.3d at 818.  Savoie argues that

this rule applies only to municipalities and that private entities can be held liable based on a respondeat superior theory. This argument, too, has no basis in law or fact. This Court has previously found that respondeat superior is not a valid theory of liability for private contractors employed by a state, *Street*, 102 F.3d at 818. Indeed, "every circuit to consider the issue" has extended "to private corporations as well" the rule that a defendant cannot be held liable under section 1983 on a respondeat superior or vicarious liability basis. *Id.* That Stites & Harbison is a professional limited liability company makes no difference with respect to respondeat superior liability under section 1983. *See, e.g.*, *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (finding that section 1983 claims against limited liability company cannot be based on respondeat superior). Thus, the district court did not err in finding that Savoie cannot pursue a claim of liability based on respondeat superior or vicarious liability against Stites & Harbison pursuant to section 1983.

Stites & Harbison's liability to Savoie under section 1983 thus depends upon a demonstration that Savoie's "constitutional rights were violated and that a policy or custom" of Stites & Harbison "was the moving force behind the deprivation of the plaintiff's rights." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010) (citation and internal quotation marks omitted). "A systematic failure to train police officers adequately is a custom or policy which can lead to municipal liability." *Id.* The district court found that Savoie failed to state an allegation regarding a policy or custom of Stites & Harbison. Savoie himself does not argue either that Stites & Harbison had in place a "policy or custom" that was "the moving force behind" the alleged constitutional violation, or that he properly pled the existence of such a policy or practice. Instead, Savoie argues that he did not have to allege that any such policy or custom was in place because Stites & Harbison could be held directly liable. As we have already explained here and over the years, a defendant cannot be held liable under section 1983 on a respondeat superior or vicarious liability basis.

In the Second Amended Complaint, Savoie alleges that Stites & Harbison failed "to properly select, supervise, and educate" Martin. Savoie does not allege that a policy

or practice at Stites & Harbison was "the moving force behind" his claim and his only potentially valid claim about Stites & Harbison is based on the law firm's alleged failure to train Martin. However, a systematic failure to train employees amounts to a custom or policy for which the employer may be subject to § 1983 liability only if such failure amounts to deliberate indifference to the rights of persons with whom the employees come into contact. *Miller*, 606 F.3d at 255. "To establish deliberate indifference, the plaintiff 'must show prior instances of unconstitutional conduct demonstrating that the [employer] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.'" *Id.* (quoting *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005)). Tennessee Supreme Court Rule 31, section 17 prescribes the training required for mediators and states that all mediators must be approved by the Alternative Dispute Resolution Commission, a commission established by the Tennessee Supreme Court. Savoie has not alleged that Martin did not obtain this training and approval from the Alternative Dispute Resolution Commission. Nor has he alleged that Stites & Harbison had any independent duty to provide training over and above that required by the Alternative Dispute Resolution Commission. Nor has he alleged that other Stites & Harbison employees who served as mediators have engaged in prior instances of unconstitutional conduct such that Stites & Harbison could be deemed to have demonstrated deliberate indifference to the inadequacy of its employees' training. Thus, even assuming Savoie had intended to plead that Stites & Harbison had a policy or practice of failing to train mediators and that Stites & Harbison was therefore "the moving force behind" Martin's alleged violation of Savoie's constitutional rights, no policy or practice of Stites & Harbison could have caused the violation. We agree with the district court that Savoie did not state a valid claim of relief against Stites & Harbison pursuant to section 1983. The district court also did not err when it declined to exercise supplemental jurisdiction over Savoie's state law claims against Stites. *See Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 233 (6th Cir. 1997).

3.      Declaratory and Injunctive Relief

Savoie claims that the district court wrongfully dismissed his claims for injunctive and declarative relief as well. We review the denial of a request for injunctive or declaratory relief for abuse of discretion. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) (declaratory relief); *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 540 (6th Cir. 2007) (injunctive relief). Savoie requested the following declarations: (1) Tennessee Supreme Court Rule 31, section 10 is jurisdictional; (2) "the fundamental rights of litigants can only be waived by a knowing and personal waiver before the tribunal"; (3) a state court-appointed parental coordinator has a duty to the court and the litigants to provide due process protections and to maintain confidentiality; and (4) state courts must impose "strict protections" over "the involuntary removal of children (without direct consent of both parents) from the United States to Japan." The district court rejected the first request based on its decision that Tennessee Supreme Court Rule 31 is not jurisdictional and declined to exercise jurisdiction over the other requests for declaratory relief because the underlying state court proceedings had already concluded.

The district court analyzed Savoie's requested declaratory relief pursuant to factors laid out by this Court in *Grand Trunk Western Railroad Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). In *Grand Trunk*, we explained that "[t]he two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.* Again, as we have over the years, we articulate the following five factors to be considered in determining whether a court should render declaratory relief, *id.* (citations omitted):

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata"; (4) whether

the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

Our review of these factors convinces us that the district court did not abuse its discretion in declining to render the requested declaratory relief. As the district court noted, the underlying state court proceedings in this case have concluded and a final order has been entered on the pending petition. Savoie's petition for modification of the custody agreement was resolved and entered on June 3, 2009, and Martin, as a judge, recused himself as he should have from Savoie's divorce and custody proceedings soon after the March 30 hearing. As of August 2009, Savoie has been awarded sole custody of the children and Savoie's ex-wife has been separately charged with felony custodial interference under Tennessee state law. Declaratory relief cannot settle the controversy between Savoie and the defendants. The case has been concluded. Further, each of the four requested declarations involve directing Tennessee state courts on the application or interpretation of state laws or the treatment of litigants.

We conclude that, of the five *Grand Trunk* factors, the first and the fourth weigh against the issuance of a declaratory judgment. The third, relating to a race for res judicata, does not appear to apply in this case as we are not aware of any ongoing litigation in any other court relating to this matter. "In light of the 'unique and substantial' discretion which the Declaratory Judgment Act confers on district courts, our consideration of all of the factors does not leave us with a definite and firm conviction that the district court committed a clear error of judgment," *Scottsdale Ins. Co.*, 513 F.3d at 560, 563, in declining to exercise the jurisdiction granted it under the Act and not rendering declaratory relief in this case.

Savoie also asked the court to enjoin Tennessee judges "from presiding over any matter under which they served as a Rule 31 mediator." Savoie's claim for injunctive relief fails because "injunctive relief shall not be granted" in an action brought against "a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable."

42 U.S.C. § 1983; *accord Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999).  The district court did not err in declining to render this relief.

III.

The judgment of the district court is AFFIRMED.