ROBERT J. JONKER, CHIEF UNITED STATES DISTRICT JUDGE
This case involves sexual misconduct by a teacher at a public high school in Grand Rapids, Michigan. There is no question that the teacher's behavior was reprehensible-in fact, criminal-and that the students were victims in this experience. The teacher was fired and is now serving time in prison. The question in this case is whether the school district and its senior *915 administrators are civilly accountable for the teacher's criminal conduct and their response to it. Based on the record developed in this case, the Court finds that Plaintiffs have not created a genuine issue of material fact, and that Defendants are entitled to judgment as a matter of law. Accordingly, Defendants' motions for summary judgment are granted.
BACKGROUND
Jamila Williams was a math teacher at University Preparatory ("U-Prep"), a public high school in Grand Rapids, Michigan. Jamila had been a highly regarded teacher at U-Prep for five years going into the 2012-2013 school year. Plaintiffs J.S., T.B., and U.J. were in ninth grade at that time. Plaintiffs Deprece Irvin and Kyree Robertson were in eleventh grade. All of these students had a class or home room with Jamila. At the time, Daniel Williams was the principal and Kenyatta Hill the vice-principal at U-Prep. Larry Johnson was the assistant superintendent and director for public safety and security for Grand Rapids Public Schools.
I. The Sexual Abuse and Harassment
Jamila began text messaging with several of the Plaintiffs on sexually suggestive topics in January 2013. Things intensified over spring break, when Jamila had a sexual encounter with U.J. at his house. In the spring of 2013, Jamila also had a sexual encounter with J.S. in the alley behind his house and once while driving him to a school internship. During that same time, Jamila had a sexual encounter with Deprece at his house. There is no record basis suggesting that any Defendants knew of these activities as they were occurring.
As spring progressed, sexual activity moved from off-site locations to school itself. Later that spring, Jamila reportedly had sex with U.J. in her classroom at school several times over a period of weeks. Jamila had suggestive communications with the Plaintiffs at school during class hours and after-school tutoring during the spring. The parties agree that Jamila and her victims were all trying to keep the illicit relationships secret, with the only real discussion occurring among the Plaintiffs. There is no record basis suggesting any Defendant knew about these things as they occurred.
II. Rumors Regarding the Misconduct
The first record evidence of information reaching any Defendant is an incident report dated May 30, 2013.[1] According to the report, a teacher told Hill on May 27, 2013, that a parent had approached the teacher at school saying that children were "discussing inappropriate texts being sent between [Jamila] and several students." (ECF No. 191, PageID.4058). The incident report identifies J.S. as the victim and T.B., U.J., Kyree, and Deprece as "Others involved." Hill reported this to Sgt. James Turner of the Grand Rapids Public School Department of Public Safety on the date of the report (ECF No. 33 ).
On Friday, May 31, most of the students at U-Prep went on a trip to the zoo. While on this trip, some students heard rumors about Jamila engaging in inappropriate behavior with students. Reuben Riley, a Youth Advocate employed at U-Prep, heard from two students that J.S. and U.J.
*916 were having sex with Jamila (ECF No. 18, PageID.3268-3269). Riley possibly broached the topic with another Youth Advocate, but neither of them reported it to anyone else at the time. Id.
On Sunday, June 2, 2013, J.S. told his sister that he was "messing around" with Jamila after his sister found text messages between J.S. and Jamila on J.S.'s phone. J.S.'s sister told Kyree's sister, who, in turn, told her mother, Denise Cross.
III. The Termination of Jamila's Employment
On Monday, June 3, Denise Cross confronted Jamila after her first hour class at school. According to Jamila, after Cross left, she went to Hill's office and told Hill that a parent had confronted her about "inappropriate texting" with students and "messing around" with them (ECF No. 163-11, PageID.3208). Hill followed up with Sergeant Turner from the Grand Rapids Police Department and also advised Williams of unfolding events (ECF No. 152, PageID.2291; ECF No. 191, PageID.4060; ECF No. 152-1, PageID.2321). Turner called Johnson and relayed the information that Hill had given him (ECF No. 163-14, PageID.3240-3241).
At about the same time, another teacher, Jason Stachura, heard rumors of inappropriate conduct between Jamila and students. (ECF No. 152-1. PageID.2317). After relaying these rumors to Hill, Stachura prepared a "Report of Actual Suspected Child Abuse or Neglect" and faxed it to the Department of Human Services at 1:14 P.M. (ECF No. 163-15, PageID. 3252; ECF No. 34 ). Child Protective Services referred the report to the GRPD after receiving it (ECF No. 163-21, PageID.3284). The GRPD assigned the case to Detective Mark Miller, who called Johnson for more details. Id. at 3285. In quick succession, the GRPD opened a criminal investigation that led to Jamila's suspension that same day.[2]
That afternoon, one of the Plaintiffs' mothers, Shaunika Williams, informed Williams that her son was involved with Jamila. Id. Upon hearing the allegations, Williams called Johnson. Johnson immediately arranged for a meeting between the Plaintiffs and Detective Mark Miller at the GRPD building. Id. at PageID.2332, 2336. At around 4 P.M., Williams called Jamila and directed her to leave the school premises and not return or communicate with any of the students. Id. at PageID.2334. It is undisputed by the parties that Jamila did not communicate in any manner with the Plaintiffs or any other students after June 3, 2013. Superintendent Neal prepared and sent a letter to the parents of students at U-Prep encouraging anyone with information concerning the incidents to contact the GRPD or the Grand Rapids Public Safety Department (ECF No. 152-2, PageID.2393).
Following the police investigation, criminal charges were filed against Jamila and the school district suspended her. Jamila is now serving an eight to fifteen-year sentence with the Michigan Department of Corrections.
IV. The Follow-Up
Williams and Hill provided accommodations to U.J., J.S., and Kyree to complete their final examinations, and some of the victims were also given extra credit to *917 bring their grades up (ECF No. 152-2, PageID.2342-2347; ECF No. 191, PageID.4061). Williams scheduled a meeting with Deprece, who already had a poor academic record covering several years, to discuss a plan for Deprece to graduate and continue at U-Prep (ECF No.152-7, PageID.2511). Kyree attended summer school at U-Prep that summer, but enrolled at a different school in the fall. Deprece, U.J., and J.S. all ended up enrolling in different schools as well. Deprece did not qualify to return to U-Prep because of his grades. The other victims chose to go to other schools.
V. The Litigation
On November 11, 2014, Plaintiffs filed a complaint with this Court, alleging five counts against Defendants (ECF No. 1 ). Count I alleged violation of Title IX ( 20 U.S.C. § 1681, et seq. ) as to Defendant Grand Rapids Public Schools District (GRPS). Count II alleged violation of Title IX - Retaliation as to Defendant GRPS. Count III claimed Defendants GRPS, Weatherall-Neal, Williams, Johnson, and Hill violated Section 1983 ( 42 U.S.C. § 1983 ). Count IV alleged Monell liability under Section 1983 against GRPS. Count V claimed violation of the Michigan Elliott-Larsen Civil Rights Act ( MCLA § 37.2102(1) ) by GRPS. Count V was later dismissed because the Court declined to exercise supplemental jurisdiction over that claim (ECF No. 36 ). Additionally, the Court dismissed Plaintiffs' individual capacity claim against Weatherall-Neal (ECF No. 45 ).
On January 29, 2016, Defendants moved for summary judgment on Plaintiffs' individual capacity claims under Section 1983 (ECF No. 128 ; 129). On February 27, 2016, Defendants moved for summary judgment on Plaintiffs' Title IX and Monell liability claims (ECF No. 151 ; 152). Plaintiffs opposed Defendants' motions. This Court heard oral argument on Defendants' motions on July 14, 2016.
SUMMARY JUDGMENT STANDARD
Summary judgment is appropriate where the record evidence presents no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it is defined as such by substantive law and will affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine dispute exists, precluding summary judgment, if the court finds that a reasonable jury could find for the nonmoving party. Id. The burden is on the moving party to show that no genuine dispute as to any material fact exists. Fed. R. Civ. P. 56(c)(1).
If the moving party satisfies this burden, the nonmoving party must go beyond conclusory allegations and unsubstantiated assertions to identify specific admissible evidence and show how that evidence supports their claims. Little v. Liquid Air Corp. , 37 F.3d 1069, 1075 (5th Cir. 1994). If the nonmovant fails to meets this burden, summary judgment is appropriate. Topalian v. Ehrman , 954 F.2d 1125, 1132 (5th Cir. 1992). Moreover, summary judgment is required where, "after adequate time for discovery and upon motion ... a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett , 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding a motion for summary judgment, the court draws all inferences in a light most favorable to the nonmoving party.
*918 Agristor Fin. Corp. v. Van Sickle , 967 F.2d 233, 236 (6th Cir. 1992).
ANALYSIS
I. Title IX
Title IX provides that "[n]o person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX provides for an implied right of action for monetary damages. Gebser v. Lago Vista Ind. Sch. Dist. , 524 U.S. 274, 280-81, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998) (citing Cannon v. Univ. of Chicago , 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) ). A plaintiff may bring an action for sexual harassment or abuse of a student under Title IX. Williams ex rel. Hart v. Paint Valley Local Sch. Dist. , 400 F.3d 360, 363 (6th Cir. 2005). To succeed in such an action, it is the plaintiff's burden to establish that "(1) an act of abuse or harassment occurred; (2) a school official with sufficient authority had actual notice that the abuser posed a substantial risk of abuse to students, and (3) the school district was deliberately indifferent to that substantial risk." Campbell v. Dundee Comm. Schs. , No. 12-cv-12327, 2015 WL 4040743, at *3 (E.D. Mich. July 1, 2015) (citing Gebser , 524 U.S. at 285, 290, 118 S.Ct. 1989 ).
Here, the parties do not dispute the first prong. It is undeniable that Jamila sexually abused and harassed Plaintiffs and several other students. However, Defendants contend that they did not have actual notice of a substantial risk of abuse and that, in any event, they were not deliberately indifferent to that risk.
A. Actual Notice of a Substantial Risk of Abuse
To establish actual notice of a substantial risk of abuse under Title IX, Plaintiffs must establish that an "appropriate person" had notice of that risk and "an opportunity to rectify any violation." Gebser , 524 U.S. at 290, 118 S.Ct. 1989. "An 'appropriate person' under § 1682 is, at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination." Id. It is undisputed by the parties that Principal Williams, Assistant-Principal Hill, and Assistant-Superintendent Johnson are "appropriate persons" under Title IX having authority to take corrective action to end the sexual abuse and harassment. (ECF No. 191, PageID.4053-4054).
To establish actual notice under Title IX, it is insufficient merely to show that Defendants were on notice of some inappropriate behavior. Gebser , 524 U.S. at 291-92, 118 S.Ct. 1989. Rather, the "appropriate person" must be on notice of a substantial risk of the actual type of abuse that would provide for liability under Title IX. See id. In Gebser , the Supreme Court observed that a parent's complaint that a teacher made "inappropriate comments" during class was insufficient to alert a school official to the possibility that the teacher was engaged in a sexual relationship with a student. Id. at 292, 118 S.Ct. 1989. Moreover, in Henderson v. Walled Lake Consol. Schs. , the Sixth Circuit held that a teacher's "communications at odd hours, inappropriate counseling, unchaperoned off-campus activities and inappropriate interactions with team members" failed to "hint[ ] at the existence of a hostile environment." 469 F.3d 479, 490 (6th Cir. 2006).
Plaintiffs claim that Defendants' knowledge of an incident on May 30, 2013, establishes that they had "actual notice" that Jamila's actions posed a substantial risk of abuse to Plaintiffs prior to June 3, *919 2013. According to an incident report dated May 30, 2013,[3] a teacher told Hill on May 27, 2013, that a parent had approached the teacher at school saying that children were "discussing inappropriate texts being sent between [Jamila] and several students." (ECF No. 191, PageID.4058). The incident report identifies J.S. as the victim and T.B., U.J., Kyree, and Deprece as "Others involved." Id. Other than that incident, Plaintiffs point to no other specific incidents establishing that Williams, Hill, or Johnson had "actual notice" of a substantial risk that sexual abuse was occurring prior to May 30 or June 3, 2013 (ECF No. 191, PageID.4055-4059).[4]
Viewing the facts in light most favorable to Plaintiffs, none of the Defendants had actual notice of any potential Title IX liability any earlier than May 30, 2013. A reasonable jury could find that Defendant Hill had actual knowledge, as of May 30, of reports that Jamila was sending inappropriate texts to students and that Hill passed the same information to Williams the same day. Id. The actual notice standard set forth in Gebser , however, requires more than knowledge of allegations of "inappropriate behavior." Gebser , 524 U.S. at 291-92, 118 S.Ct. 1989. Rather, Plaintiffs must establish that Hill was actually aware of a substantial risk of abuse that would give rise to liability under Title IX. That did not occur until June 3, which was the very day Defendants acted to remove Jamila from the school. Because Plaintiffs have failed to provide any evidence that any Defendant had actual notice of this type of risk before they took action against her, Plaintiffs fail to establish a critical prong of liability. Gebser , 524 U.S. at 291-92, 118 S.Ct. 1989 ; Henderson , 469 F.3d at 490.
B. Deliberate Indifference
A recipient of federal funds may be liable for the actions of an "appropriate person" under Title IX where such person "intentionally acted in clear violation of Title IX by remaining deliberately indifferent to known acts of harassment." Vance v. Spencer Cnty. Pub. Sch. Dist. , 231 F.3d 253, 260 (6th Cir. 2000). "[T]he deliberate indifference must, at a minimum, 'cause [students] to undergo harassment or make them liable or vulnerable' to it." Id. (quoting Davis v. Monroe Cnty. Bd. of Educ. , 526 U.S. 629, 645, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) ). "[A] plaintiff may demonstrate [a] defendant's deliberate indifference to discrimination 'only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.' " Id. (citing Davis , 526 U.S. at 648, 119 S.Ct. 1661 ). However, "[t]he recipient is not required to 'remedy' sexual harassment nor ensure that students conform their conduct to certain rules, but rather, 'the recipient must merely respond to known ... harassment in a manner that is not clearly unreasonable.' " Id. (citing Davis , 526 U.S. at 648-49, 119 S.Ct. 1661 ). "Victims do not *920 have a right to particular remedial demands." Id. (citing Davis , 526 U.S. at 648, 119 S.Ct. 1661 ).
Even assuming that Defendants had actual notice of a substantial risk of sexual abuse and harassment on May 30, the question remains whether Defendants' response was "clearly unreasonable in light of the known circumstances." See Davis , 526 U.S. at 648, 119 S.Ct. 1661. Plaintiffs claim that Defendants were deliberately indifferent for three reasons. First, Plaintiffs claim that Hill's delayed response to reports of Jamila's sexual abuse establishes deliberate indifference (ECF No. 191, PageID.4060). Second, Plaintiffs claim that Defendants' alleged failure to support, accommodate, or otherwise remedy the harm done by Jamila's sexual abuse constitutes deliberate indifference. Id. at PageID.4061. Third, Plaintiffs allege that Defendants' failure to comply with Title IX regulations, specifically their lack of conducting an independent investigation, establishes deliberate indifference. Id. at PageID.4062-4064.
1. Timing of Response
Defendants' response to the unfolding situation cannot be characterized as delayed in any meaningful way, much less deliberately indifferent. Defendants arguably received initial reports of inappropriate conduct in the morning of May 30. This was the earliest possible date of any actual knowledge of inappropriate conduct. It was not until the parental confrontation of June 3 that any Defendant heard of the more serious sexual misconduct.
Defendants promptly reacted. On the morning of June 3, Defendants immediately began investigating the matter, contacted the GRPD by noon, and removed Jamila by 4 P.M. that same day. Therefore, Defendants' response occurred on the very day Defendants learned of the most serious allegations, and only two school days after the earliest possible actual notice of any inappropriate activity if the jury credits the May 30 date on the report. As such, Defendants acted promptly and responsibly to prevent further abuse. See Pahssen v. Merrill Comm. Sch. Dist. , 668 F.3d 356, 364 (6th Cir. 2012) (finding no deliberate indifference where district's response to the incident was "prompt [and] reasonable"). The cases cited by Plaintiffs are not to the contrary, as those cases discuss delays of months and weeks, not days or hours. See e.g., Doe v. Rutherford Cnty. Bd. of Educ. , No. 3:13-cv-00328, 2014 WL 4080163, at *13-*14 (M.D. Tenn. 2014) (holding deliberate indifference established where "school officials dragged their feet for months in response to potentially serious allegations of sexual harassment"); Dawn v. Greater Johnstown Sch. Dist. , 586 F.Supp.2d 332, 370-71 (W.D. Pa. 2008) (finding deliberate indifference established where school district failed to investigate until four weeks after a complaint was filed).
Indeed, on the present record, it is hard to envision how the department could have acted more quickly. Any school administrator faced with allegations of abuse needs to gather information quickly and consider the level of risk to the students, the teacher's rights as an employee, and the need to permit criminal and CPS investigation along with internal school investigation. In this case, the record establishes as a matter of law that the Defendants acted promptly and without deliberate indifference to what they learned. Moreover, the undisputed record further demonstrates that on the rare other occasions in which the GRPS encountered similar allegations, it and its responsible administrators acted with similar dispatch to remove any potential ongoing threat to students (ECF No. 192, PageID.4457-4461). No reasonable fact-finder could conclude on this record *921 that the Defendants were deliberately indifferent. See Pahssen , 668 F.3d at 364 (holding that "prompt [and] reasonable" response by district precluded a finding of deliberate indifference).
2. Remedial Actions
Defendants' remedial actions likewise fail to establish deliberate indifference. It is undisputed that subsequent to the removal of Jamila from school grounds, Superintendent Neal prepared and sent a letter to the parents of students at U-Prep encouraging anyone with information concerning the incidents to contact the GRPD or the Grand Rapids Public Safety Department (ECF No. 152-2, PageID.2393). Williams testified that he was never contacted by any parents concerning the incident after that, and there is no evidence to the contrary.
Additionally, it is undisputed that Defendants provided accommodations to several of the Plaintiffs, including U.J., J.S., and Kyree to complete their final examinations, and some Plaintiffs were given extra credit to bring their grades up (ECF No. 152-2, PageID.2342-2347; ECF No. 191, PageID.4061). Kyree Robertson attended summer school at U-Prep (ECF No. 152-7, PageID.2510). Williams scheduled a meeting with Deprece, who already had a poor academic record covering several years, to discuss a plan for Deprece to graduate and continue at U-Prep (ECF No.152-7, PageID.2511).
Plaintiffs' allegations that Defendants should have interviewed the Plaintiffs and accommodated their needs in other ways (ECF No. 191, PageID.4061) are insufficient to establish deliberate indifference. See Rost v. ex. rel. K.C. v. Steamboat Springs RE-2 Sch. Dist. , 511 F.3d 1114, 1123 (10th Cir. 2008) (holding that failure of district to independently interview the plaintiffs may establish negligence, but not deliberate indifference). There may be a dispute concerning whether Defendants looked into the well-being of each of the Plaintiffs individually, but there is no evidence that Defendants ignored a known condition of any of the Plaintiffs. See Fitzgerald v. Barnstable Sch. Comm. , 504 F.3d 165, 174 (1st Cir. 2007) (noting "[i]n hindsight, there may be other and better avenues that the [district] could have explored ... [b]ut Title IX does not require ... flawless investigations [or] perfect solutions."). Viewing the facts in light most favorable to Plaintiffs, Defendants cannot be said to have acted in a manner "clearly unreasonable in light of known circumstances." Davis , 526 U.S. at 648, 119 S.Ct. 1661.
3. Compliance with Title IX Regulations and Independent Investigation
Defendants' failure to comply with Title IX regulations, specifically their lack of conducting an independent investigation after Jamila was removed, also fails to establish deliberate indifference. The Supreme Court has held that "alleged failure to comply with the [Title IX] regulations ... does not establish ... actual notice and deliberate indifference." Gebser , 524 U.S. at 291-92, 118 S.Ct. 1989 ; see also Roe v. St. Louis Univ. , 746 F.3d 874, 883 (8th Cir. 2014). Moreover, the Court "has never held that 'the implied private right of action under Title IX allows recovery in damages for violation of [such] administrative requirements.' " St. Louis Univ. , 746 F.3d at 883 (quoting Gebser , 524 U.S. at 291-92, 118 S.Ct. 1989 ).
Defendants' decision not to conduct an independent investigation after Jamila was removed also does not establish deliberate indifference. The undisputed facts show that same day the Defendants first heard about the sexual abuse and harassment, all the Defendants participated in an investigation (ECF No. 152-1, PageID.2317-2336).
*922 The Defendants notified Sgt. Turner, a Grand Rapids Police detective, and the GRPD immediately. Id. Defendants continually interacted with Sgt. Turner and the GRPD throughout the investigation. Id. Defendants cannot be faulted for letting the GRPD take the lead in this very serious situation. Indeed, the criminal investigation led to the prosecution and punishment of the criminal wrongdoer. The Defendants' response was not clearly unreasonable as they all immediately notified the GRPD, assisted the GRPD investigation in every way possible, and continually monitored the ongoing situation. See Rost , 511 F.3d at 1121 ("The district's response was not clearly unreasonable as school officials immediately contacted law enforcement officials, cooperated fully in the investigation, and kept informed of the investigation."). Thus, Defendants are entitled to summary judgment on Plaintiffs' claim for violation of Title IX.
II. Title IX - Retaliation
Claims for retaliation under Title IX are analyzed using the same standards developed under federal law for Title VII cases. Nelson v. Christian Bros. Univ. , 226 Fed. App'x 448, 454 (6th Cir. 2007).
A. Prima Facie Case
To establish a prima facie case for retaliation, a plaintiff must show:
(1) that she engaged in protected opposition to ... Title IX discrimination or participated in a ... Title IX proceedings; (2) that plaintiff's exercise of her protected rights were known to defendants; (3) that she was subjected to an adverse [educational] action subsequent to or contemporaneous with the protected activity; and (4) that there was a causal connection between the protected activity and the adverse [educational] action.
Thomas v. Meharry Medical College , 1 F.Supp.3d 816, 827 (M.D. Tenn. 2014).
Here, there is no dispute that Plaintiffs engaged in protected activity as of June 3, 2013, based on their reports of the sexual abuse and harassment by Jamila. Further, Defendants do not dispute that they were aware of this activity by June 3, as the GRPD investigation revealed the names of all the victims. Defendants dispute, however, that Plaintiffs were subject to an adverse educational action and that any adverse action was caused by the protected activity.
1. Adverse Educational Action
Regarding the adverse educational action prong, Plaintiffs allege that Defendants engaged in an adverse educational action because they "made it known ... that Plaintiffs were not wanted back at U- Prep" (ECF No. 191, PageID.4066). "The term 'adverse action' is drawn from the employment case law; examples in that context include discharge, demotions, refusal to hire, nonrenewal of contracts, and failure to promote." Thaddeus-X v. Blatter , 175 F.3d 378, 396 (6th Cir. 1999). In the educational context, therefore, Plaintiffs basically allege that Defendants refused to allow Plaintiffs to return as students to U-Prep.
Plaintiffs' unsupported generalizations that "Plaintiffs were viewed as distractions and embarrassments to the new special school," that "Plaintiffs' mothers were all uncomfortable sending their sons back to U-Prep" and the fact that Plaintiffs did not end up returning to U-Prep fails to establish that Defendants subjected Plaintiffs to a materially adverse educational action. See Burlington N. & Santa Fe Ry. Co. v. White , 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (holding that to establish retaliation, "a plaintiff must show that a reasonable [person] would have found *923 the challenged action materially adverse, which ... means it well might have dissuaded a reasonable [person] from [engaging in protected activity.]"). Even assuming Plaintiffs' allegations are true, they do not establish a materially adverse "action" by Defendants. See Fincher v. Depository Trust and Clearing Corp. , 604 F.3d 712, 721 (2d Cir. 2010). Rather, the general allegations focus on Defendants' internal thought process or concerns, not on conduct by Defendants.
Moreover, Plaintiffs' unsupported allegations conflict with Defendants' attorney Barb Ruga's response to Plaintiffs' counsel's email discussing Plaintiffs' difficulty in staying and transferring to a different school. In Ruga's response, she requested that Plaintiffs "contact Deputy superintendent Larry Johnson ... to explain their needs" and "reiterated [the District's] "commitment to assist the families in remaining [at U-Prep] or transferring, as they prefer." (ECF No. 152-4, PageID.2377-2378). Most importantly of all, Plaintiffs themselves admit in sworn testimony that they all felt welcome to return to U-Prep (ECF No. 129-12, PageID.1855) (testimony of J.S.); (ECF. 129-10, PageID.1824) (testimony of U.J.); (ECF No. 129-16, PageID.1915) (testimony of T.B.) (ECF No. 129-18, PageID.1938) (testimony of Kyree Robertson).
Plaintiff's evidence regarding Hill's representations to Paula Irvin and Deprece at their meeting, however, could be enough to meet the prima facie threshold of a materially adverse educational action. At a meeting between Williams, Hill, Paula, and Deprece to discuss the possibility of Deprece returning back to U-Prep despite his poor grades, Hill told Paula and Deprece that she "was in a Board meeting with some of the Board members, and we ... really don't want Deprece back." (ECF No. 191-1, PageID.4076). Paula asked Hill why, and Hill responded: "Well, in light of everything." Id. Paula asked, "In light of what?" and Hill turned and walked away. Id. at PageID.4076-4077. Williams then stated: "We just all agree that its in the best interest of Deprece that he not come back here." Id. at PageID.4077. Thus, viewed in light most favorable to Deprece, the "adverse educational action prong" of the prima facie case could be established.
2. Causation
To establish causation, a plaintiff must "proffer evidence sufficient to raise the inference that [its] protected activity was the likely reason for the adverse action." EEOC v. Avery Dennison Corp. , 104 F.3d 858, 861 (6th Cir. 1997). The Sixth Circuit has held that causation can be proven based on circumstantial evidence such as timing. Mickey v. Zeidler Tool & Die Co. , 516 F.3d 516, 523, 525 (6th Cir. 2008). In fact, the causal connection is established "[w]here an adverse [educational] action occurs very close in time after an employer learns of a protected activity." Id. at 525.
Here, Plaintiff Deprece's evidence is sufficient to meet the causal connection requirement of the prima facie case. The temporal proximity of Hill and Williams' statements to the protected activity, when combined with the fact that Hill specifically stated that Deprece should not return to U-Prep "in light of everything," creates an inference that Deprece's protected activity motivated Hill and Williams' comments and actions. See Marcum ex rel. C.V. v. Bd. of Educ. of Bloom-Carroll Local Sch. Dist. , 727 F.Supp.2d 657, 671 (S.D. Ohio, 2010) (holding that the temporal proximity of plaintiff's complaints to her expulsion from the school established the causal connection). Thus, Plaintiffs have established a prima facie case of retaliation with regard to Deprece.
*924 B. Legitimate, Nondiscriminatory Reason
If a plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. McDonnell-Douglas Corp. v Green , 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Here, Defendants have met their burden of production because they have provided evidence showing that Deprece's academic record over the past seven years was the reason for Defendants' statements to the effect that it was best for Deprece not to return to UPrep and their decision not to enroll him for the following school year (ECF No. 152-9, PageID.2416-2418). Moreover, it is undisputed that Deprece in fact had the option of returning to U-Prep as long as he "worked hard." (ECF No. 191-1, PageID.4076; ECF No. 129-14, PageID.1892).
C. Pretext
Because Defendants satisfied their burden of production, the burden shifts back to Plaintiffs to show that the reason given by Defendants was pretextual. See Harris v. Metropolitan Gov't of Nashville and Davidson Cnty. , 594 F.3d 476, 485 (6th Cir. 2010). Plaintiffs can prove pretext by showing that the proffered reason: (1) had no basis in fact; (2) did not actually motivate the adverse educational action; or (3) was insufficient to motivate the adverse educational action. See Manzer v. Diamond Shamrock Chems. Co. , 29 F.3d 1078, 1084 (6th Cir. 1994).
Here, Plaintiffs have provided no evidence establishing that Defendants' reason for their decision not to enroll Deprece for the following school year was pretextual. Plaintiffs have provided no comparator evidence of other students who had a similar or worse academic record than Deprece but were not transferred or were allowed to return (ECF No. 191, PageID.4066-4068). Additionally, Plaintiffs do not allege that Deprece's poor academic record, over the past seven years, was an insufficient basis for Defendants to condition Deprece's return for the following school year on his to promise to work hard. Id. Plaintiffs also fail to show that Deprece's academic record has no basis in fact, as Deprece himself admitted that his academic record was, in fact, very poor, and that this had consistently been the case (ECF No. 129-14, PageID.1884-1885).
Because the undisputed evidence establishes that Defendants notified Plaintiffs that they were all welcome to return to U-Prep the semester following the incident, Plaintiffs themselves testified they felt welcome to return to U-Prep, and Plaintiffs are unable to show that Defendants' reason for deciding not to enroll Deprece for the next year is pretextual, Defendants are entitled to summary judgment on Plaintiffs' claim for retaliation under Title IX.
III. Section 1983 Individual Liability
To establish individual liability under § 1983, a Plaintiff must show that "the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it, or at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." Leary v. Daeschner , 349 F.3d 888, 903 (6th Cir. 2003) (citations and internal quotation marks omitted). Liability "must be based on more than the right to control employees. Likewise, simple awareness of employees' misconduct does not lead to supervisor liability." Id.
In the educational context, a "plaintiff must show that, in light of the information the defendants possessed, the teacher who engaged in sexual abuse *925 showed a strong likelihood that he would attempt to sexually abuse other students, such that the failure to take adequate precautions amounted to deliberate indifference to the constitutional rights of students." Doe v. City of Roseville , 296 F.3d 431, 439 (6th Cir. 2002). The Plaintiffs must establish that the "defendants' conduct amounted to a tacit authorization of the abuse." Claiborne , 103 F.3d at 513 (citation omitted). "[L]iability must be based on active unconstitutional behavior, and ... a mere failure to act [is] not sufficient." Roseville , 296 F.3d at 440.
Plaintiffs claim that Defendants Johnson, Williams, and Hill violated their constitutional rights by "ignor[ing] the obvious risk" that Jamila would sexually abuse her students (ECF No. 163, PageID.3060). As such, Plaintiffs allege that Defendants were aware of Jamila's misconduct and failed to prevent it. Plaintiffs' claim, however, fails as a matter of law because it does not establish any active unconstitutional behavior on behalf of Defendants. See Roseville , 296 F.3d at 439. To the contrary, Plaintiffs' claim is contradicted by the undisputed fact that on June 3, 2013, within hours after receiving notice of the misconduct, all of the Defendants participated in investigating the allegations, contacting law enforcement, and removing Jamila from the school premises.
Plaintiffs also allege that Defendant Hill in particular violated their constitutional rights by "taking active measures to protect Jamila from being found out and disciplined." (ECF No. 163, PageID.3061). To the extent that Plaintiffs allege that Hill engaged in active unconstitutional behavior, however, Plaintiffs have failed to provide any admissible allegations beyond mere unsupported assertions. Id. at 3060-61. Plaintiffs' unsupported assertions that Hill "deliberately withheld information from Turner and Williams" and "monitored the hallways" to prevent Jamila from being caught, id. , do not create a material issue of fact. See Little v. Liquid Air Corp. , 37 F.3d 1069, 1075 (5th Cir. 1994). Once again, the undisputed evidence establishes the contrary; namely, that as soon as Defendants received actual notice of reported abuse, they reacted promptly to remove Jamila from the school.
Plaintiffs have failed to establish that Defendants encouraged, participated in, or implicitly authorized, approved, or knowingly acquiesced in Jamila's misconduct. See Leary , 349 F.3d at 903. Thus, Defendants Hill, Williams, and Johnson cannot be held individually liable under § 1983 for Jamila's misconduct and are entitled to summary judgment on Plaintiffs' claims.
IV. Section 1983 Municipal Liability
Section 1983 protects against deprivation "of any rights, privileges, or immunities secured by the Constitution and laws," as a result "of any statute, ordinance, regulation, custom, or usage, of any State." 42 U.S.C. § 1983.
A. Municipal Liability
To establish a claim for municipal liability, Plaintiffs must show that (1) they were deprived of a constitutional right, and (2) that GRPS is responsible for that violation. See Doe v. Claiborne Cnty. , 103 F.3d 495, 505-506 (6th Cir. 1996). Plaintiffs argue that GRPS is liable through § 1983 for violation of Plaintiffs' right to personal security and bodily integrity. See id. at 506-507 (citing Howard v. Grinage , 82 F.3d 1343, 1349 (6th Cir. 1996) ). Here, the teacher's sexual abuse of the students satisfies the first prong. Claiborne , 103 F.3d at 505-07. Sexual abuse by a public school teacher violates both the Due Process Clause, id. at 506-07, and the Equal Protection Clause of the Fourteenth Amendment.
*926 Wells ex rel. Bankruptcy Estate of Arnone-Doran v. City of Grosse Pointe Farms , 581 Fed. App'x 469, 476 (6th Cir. 2014).
With regard to the second prong, Plaintiffs must establish either that "an officially executed policy, or the toleration of a custom within the school district leads to, causes, or results in the deprivation of a constitutionally protected right." Claiborne , 103 F.3d at 507-08 (citing Monell v. Dep't. of Soc. Servs . 436 U.S. 658, 690-91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ). Here, Plaintiffs do not allege any policy or custom that GRPS adopted that would provide for municipal liability. Rather, Plaintiffs allege that the ineffectiveness of GRPS's policies led to the constitutional deprivation (ECF No. 192, PageID.4464).
1. Custom of Inaction
Accordingly, Plaintiffs claim that GRPS failed to adopt or maintain policies that would have kept Plaintiffs free from sexual abuse. To establish that a custom consists of a failure to adopt or maintain policies, Plaintiffs must establish:
(1) the existence of a clear and persistent pattern of sexual abuse by school employees;
(2) notice or constructive notice on the part of the School Board;
(3) the School Board's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and
(4) that the School Board's custom was the "moving force" or direct causal link in the constitutional deprivation.
Claiborne , 103 F.3d at 508. In Clairborne , school officials hired a physical education teacher and allowed him to enlist a young female student as a scorekeeper despite having been notified by the Department of Human services that he had previously inappropriately touched a female student and sexually abused four children. Id. at 502. The court found that even though defendants were "recklessly passive in the performance of their duties" and perhaps negligent, the plaintiffs' evidence was insufficient to establish that defendants' tacitly approved or acquiesced to the sexual misconduct. Id. at 508-09.
Ordinarily, "[t]he absence of deliberate indifference pursuant to a Title IX claim is fatal to a companion municipal liability claim made under § 1983." McCoy v. Bd. of Educ. , 515 Fed. App'x 387, 393 (6th Cir. 2013) (citing Henderson , 469 F.3d at 492 ). Thus, to the extent that Plaintiffs restate their Title IX arguments for their § 1983 claim, those arguments are foreclosed. Plaintiffs, however, present additional evidence beyond that provided in their Title IX claim to support their § 1983 claim. Plaintiffs point to three prior incidents to establish that GRPS tacitly approved and acquiesced to a pattern of sexual abuse by school employees (ECF No. 192, PageID.4471). During the 2006-2007 school year, Ronald Taylor, a teacher at GRPS, was convicted of sexual misconduct involving several minor male students. Id. at PageID.4457. In 2009, Kenneth Hoskins, a Youth Advocate at GRPS, was criminally charged with having sexual relations with a minor at school. Id. at PageID.4458. Finally, during the 2012-2013 school year, Kevin Dengel, a parapro at GRPS Elementary School, was accused and later criminally prosecuted for sexual abuse and harassment of a minor. Id. at PageID.4460-4461.
The evidence Plaintiffs identify, however, actually shows that GRPS did not provide tacit approval or acquiescence in any way to sexual abuse and harassment. As Plaintiffs themselves acknowledge, id. at PageID.4457-4461, GRPS immediately involved the police department and terminated *927 the perpetrators' employment in each of the separate incidents. As such, the evidence does not establish that there was a clear and persistent failure by the district to respond to complaints about sexual abuse or harassment. To the contrary, the evidence establishes that GRPS dealt effectively and efficiently with problems of sexual abuse and harassment every time they occurred by confirming the reports, immediately notifying law enforcement, and promptly removing the offending staff member. These measures establish that GRPS was not deliberately indifferent to or tacitly approving of the misconduct. See Claiborne , 103 F.3d at 508. Thus, Plaintiffs fail to establish a "custom of inaction" for purposes of their § 1983 claim.
2. Failure to Train
Plaintiffs also argue that GRPS's failure to train its employees to protect students from the criminal sexual assaults of co-employees, and its administrators on how to conduct an after-the-fact investigation amounts to an official policy of inaction (ECF No. 192, PageID.4464-4477). "[A] systematic failure to train employees amounts to a custom or policy for which the employer may be subject to § 1983 liability only if such failure amounts to deliberate indifference to the rights of persons with whom the employees come into contact." Savoie v. Martin , 673 F.3d 488, 494-95 (6th Cir. 2012) (citing Miller v. Sanilac Cnty. , 606 F.3d 240, 255 (6th Cir. 2010) ). "To establish deliberate indifference, the plaintiff 'must show prior instances of unconstitutional conduct demonstrating that the [employer] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.' " Id. (quoting Fisher v. Harden , 398 F.3d 837, 849 (6th Cir. 2005) ). Under § 1983, constitutional claims are "most tenuous where a claim turns on a failure to train." Connick v. Thompson , 563 U.S. 51, 60, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011). "The standard of 'deliberate indifference' is a stringent one that requires proof that the defendants 'disregarded a known or obvious consequence' of their actions." Sagan v. Sumner Cnty. Bd. of Educ. , 726 F.Supp.2d 868, 886 (M.D. Tenn. 2010).
Plaintiffs do not dispute that, at all times relevant, GRPS had published sexual harassment policies and provided sexual harassment training. Nor can they, as Plaintiffs' own evidence establishes that GRPS provided training on exactly the type of misconduct at issue here (ECF No. 192, PageID.4456). Teachers and administrators at U-Prep are required to complete twelve training modules at the time they are hired and additional modules periodically thereafter. (ECF No. 192, PageID.4456-4457). One of these training modules addresses "Ethics & Boundaries for School Employees." (ECF No. 192-10 ). It provides several examples of "boundary violations" that could constitute sexual grooming and states that "staff members should monitor one another and, when a colleague has crossed a professional boundary, be willing to speak out." Id. at PageID.4549-4553. "[S]taff members should also question what they are observing or hearing and report behavior or comments that make a student uncomfortable and/or could lead to an inappropriate boundary violation." Id. at PageID.4554. The training module emphasizes that "[s]taff members should not work consistently with an individual student before and after school except with the knowledge of the administration and with the classroom door open." Id. at PageID.4560. A second module, entitled "Sexual Harassment," lays out the complaint procedure, providing that "[u]pon the filing of a complaint, the grievance office shall conduct a prompt and complete investigation." (ECF No. 192-11 ).
*928 Instead, Plaintiffs' claim is based on the alleged ineffectiveness of GRPS's training (ECF No. 192, PageID.4464). Plaintiffs, however, are unable to establish that GRPS ignored a history of abuse and that it was on actual or constructive notice that its training was deficient. To the contrary, every time an allegation of sexual abuse or harassment occurred, GRPS's administrators and personnel promptly responded to the allegations, notified law enforcement officials, and terminated the offending employees. It is undisputed that no unconstitutional conduct continued by the offenders subsequent to GRPS's response in each of the prior instances of misconduct. Thus, Plaintiffs fail to establish that GRPS's training was deficient and that the alleged deficiency of GRPS's training led to the misconduct at issue.
Moreover, it is unlikely that any additional training would have prevented Jamila's misconduct. Additional training for other teachers and staff would not have prevented the misconduct because it is undisputed that GRPS teachers and staff received training on exactly the type of conduct at issue here, that Jamila taught at U-Prep for several years without a single complaint or reported incident, and that once reports surfaced, they were addressed immediately. Nor would more training for Jamila herself have prevented the misconduct. Jamila testified multiple times that she knew that her conduct was risky and wrong and that it had to be reported (ECF No. 154-4, PageID.2604, 2606, 2608). Yet, Jamila deliberately engaged in criminal conduct and actively attempted to conceal the conduct. Thus, Plaintiffs have failed to establish that additional training would have prevented Jamila's misconduct and that a lack of training caused Plaintiffs' injuries. See Thorpe v. Breathitt Cnty. Bd. of Educ. , 8 F.Supp.3d 932, 942 (E.D. Ky. 2014). Accordingly, Defendants are entitled to summary judgment on Plaintiffs' claim for municipal liability under § 1983.
CONCLUSION
Accordingly, it is ordered that Defendants' Motions for Summary Judgment (ECF No. 128 ; ECF No. 151 ; ECF No. 153 ) are GRANTED .

Defendants dispute the date of the incident report, claiming that "May 30, 2013" is a typo and that the parental complaint instead occurred on June 3, 2013 (ECF No. 191, PageID.4058). In the Court's view, the three or four day difference is not material on this record, but the Court will assume the May 30 date is correct to ensure a view of the facts most favorable to Plaintiffs.

Plaintiffs complain that Jamila was allowed to talk with several of the students while the investigation was ongoing (ECF No. 163, PageID.3050). Plaintiffs do not dispute, however, that any contact that Jamila had with the Plaintiffs after the Defendants received reports of misconduct occurred that same day, out in the open, and did not involve any sexual misconduct. Id.

Defendants dispute the date of the incident report, claiming that "May 30, 2013" is a typo and that the parental complaint instead occurred on June 3, 2013 (ECF No. 191, PageID.4058).

Plaintiff's general allegation that the risk of sexual abuse should have been "obvious" to Williams, Johnson, and Hill and that "it was their job to know" of the risk, or that teachers and staff other than defendants knew of other incidents that could give rise to Title IX liability fails as a matter of law to show that Defendants had actual notice. Federal courts have consistently held that Title IX requires "actual notice," not constructive notice, and that an "appropriate person" with the requisite authority must have notice. See e.g., Warren v. Reading Sch. Dist. , 278 F.3d 163, 173-74 (3d Cir. 2002) ; Peer ex rel. Doe v. Porterfield , No. 1:05-cv-769, 2006 WL 3898263, at *9 (W.D. Mich. 2007).